UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN E GROUP LLC, Plaintiff, -against- LIVEWIRE ERGOGENICS, INC., Defendant. | Index No.: 18 Civ. 03969 (Woods) |

**PLAINTIFF AMERICAN E GROUP LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LIVEWIRE ERGOGENICS, INC.'S MOTION TO DISMISS**

CARMEL, MILAZZO & DICHIARA, LLP
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0458

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .......... ii

Preliminary Statement .......... 1

Statement of Facts .......... 2

I. Background .......... 2

II. Plaintiff Loans Funds to LVVV .......... 2

III. LVVV Breaches the Note .......... 3

Argument…… .......... 4

I. Standards on a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) .......... 4

II. Defendant Fails to Establish as a Matter of Law That the Note is Criminally Usurious .......... 4

A. The Note is Not Usurious on Its Face .......... 6

B. There Are Issues of Fact Regarding the Interest Rate .......... 8

C. Plaintiff Will Assert that Defendant is Estopped From Raising Criminal Usury as a Defense to Enforcement of the Note .......... 11

Conclusion .......... 12

**TABLE OF AUTHORITIES**

**Cases**

*Adar Bays, LLC v. Aim Exploration, Inc.*,
285 F. Sup.3d 698 (S.D.N.Y. 2018) ....................9

*Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nielson v. Rabin*,
746 F.3d 58, 62 (2d Cir. 2014) ....................4

*Augustine v. Cornell Univ*.,
2016 WL 894533, at *3 (S.D.N.Y., Mar. 8, 2016) ....................4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 556 (2007) ....................4

*Carlone v. The Lion & The Bull Films, Inc*.,
861 F. Supp.2d 312, 321 (S.D.N.Y. 2012) ....................5, 11

*City of Austin Police Retirement System v. Kinross Gold Corp.*,
957 F.Supp.2d 277, 287 (S.D.N.Y. 2013) ....................10

*Concord Fin. Corp. v. Wing Fook, Inc.*,
1997 WL 375679, at *5 (S.D.N.Y. July 7, 1997) ....................6

*Costal Inv. Partners, LLC v. DSG Global, Inc*.,
2018 WL 2744719, at *4 (S.D.N.Y/, June 6, 2018) ....................5

*Funding Group, Inc. v. Water Chef, Inc*.,
19 Misc.3d 483, 852 N.Y.S.2d 736 (Sup. Ct. 2008) ....................7

*Gandy Mach., Inc. v. Pogue*,
106 A.D.2d 684, 483 N.Y.S.2d 744 (3d Dep't 1984) ....................5

*Hillair Cap. Inv. LP v. Integrated Freight Corp*.,
963 F. Supp.2d 336, 339 (S.D.N.Y. 2013) ....................5, 8, 9, 10

*Hornblower & Weeks, Inc. v. Blue Martin Breweries, Inc.*,
2000 WL 1371329, at *6-7 (S.D.N.Y., Sep. 22, 2000) ....................11

*Lehman v. Roseanne Inv. Corp*.,
106 A.D.2d 617, 618, 483 NY.S.2d 106, 108 (2d Dep't 1984) ....................6

*Nielson v. Rabin*,
746 F.3d 58, 62 (2d Cir. 2014) ....................4

*Phlo Corp. v. Stevens*,
2001 WL 1313387, at *4 (S.D.N.Y. 2001) *aff'd*, 62 Fed. Appx. 377 (2d Cir. 2003) .....6, 9, 10, 11

*Sabella v. Scantek Medical, Inc.*,
2008 WL 3233703 (S.D.N.Y., Sep. 25, 2009) ....................................................................8, 11

*Siedel v. East 17th Street Owners, Inc.*,
79 N.Y.2d 735, 740, 598 N.E.2d 7, 586 N.Y.S.2d 240 (1992) ...........................................................5

*Union Cap. Funding LLC v. Vape Hold., Inc.*,
2017 WL 1406278, at *4 (S.D.N.Y., Mar. 31, 2017) ..........................................................5, 6, 7

*Zhavoronkin v. Koutmine*,
52 A.D.3d 597, 598, 860 N.Y.S.2d 561, 562 (2d Dep't 2008) ...........................................................6

**Statutes**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................4, 8, 12

N.Y. Gen Oblig. L. § 5-521(3) (McKinney 2017)...........................................................................5

N.Y. Penal L. § 190.40 (McKinney 2017) .......................................................................................5

Plaintiff American E Group LLC ("Plaintiff" or "AEG")), by and through its attorneys, Carmel, Milazzo & DiChiara LLP, respectfully submits this Memorandum of Law in opposition to the motion of Defendant LiveWire Ergogenics, Inc. ("Defendant" or LiveWire"), pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Amended Complaint.[1]

## Preliminary Statement

In November 2015, when LiveWire needed a loan so that it could continue its operations, AEG loaned it $30,000. In return, AEG received a promissory note executed by LiveWire, in which it promised to repay the $30,000, with interest at the rate 20 percent per annum. As additional consideration for the loan, LiveWire agreed to deliver to Plaintiff $50,000 worth of LiveWire stock (as valued by the OTCBB for freely tradeable shares on the date of the execution which had little to no value). Before the ink was dry on the promissory note, LiveWire breached the promissory note by failing to deliver the restricted stock to Plaintiff. When the promissory note came due in six (6) months, LiveWire failed to pay the principal plus interest.

Now, in a shameless attempt to avoid any of its obligations under the promissory note, LiveWire contends that this action must be dismissed, pursuant to Fed. R. Civ. P 12(b)(6), on the ground that the promissory note is criminally usurious, and void. Defendant contends that when the interest and the amount of stock is added together, it exceeds twenty-five percent per annum, and therefore violates the usury statutes. Defendant's contention lacks merit.

The stock that was to be (but never was) delivered were restricted shares under Rule 144. Therefore, the stock could not be sold for six months. As a result, the actual value of the stock was significantly less than the $50,000 market value set forth on the face of the promissory note,

[1] The Amended Complaint shall be cited herein as follows: "Am. Compl. ¶ _".

and such value cannot be determined as a matter of law at the pleadings stage. Consequently, it cannot be determined as a matter of law that the promissory note is criminally usurious.

Accordingly, the Court must deny Defendant's motion to dismiss the Amended Complaint for failure to state a claim in its entirety.

**Statement of Facts**

**Background**

LiveWire is a non-reporting publicly-traded corporation in the business of creating and developing nutritional products, acquiring and licensing special purpose real estate properties, and the management of legal, fully-controlled and self-contained greenhouses on such properties. (Am Compl. ¶ 9.) In or about mid-2015, LVVV was seeking to obtain loans and/or investments so that it could fund its operations pay off creditors and service providers. (Am Compl. ¶ 10.) In November 2015, LiveWire was introduced to Plaintiff, and solicited a loan from Plaintiff. (Am Compl. ¶ 11.)

**Plaintiff Loans Funds to LVVV**

In November 2015, Plaintiff agreed to, and did, loan Defendant the principal sum of $30,000. The loan proceeds, totaling $30,000, were paid directly by Plaintiff, at Defendant's direction, to Defendant, as well as certain of Defendant's vendors, attorneys and auditors to satisfy outstanding obligations of Defendant. (Am Compl. ¶ 12.)

In connection with the loan, LiveWire executed a promissory note, dated November 17, 2015 (the "Note") pursuant to which Defendant agreed to pay to Plaintiff the sum of $30,000 in principal together with interest due thereon was due on the date six months after the execution of the Note (the "Maturity Date"), with interest at the rate of Twenty Percent (20%) per annum. (Am Compl. ¶ 13 and Exh, A.)

Further, as additional "consideration" for the Note, (and other reasons), Defendant agreed in the Note to tender and deliver to Plaintiff a number of shares equal to $50,000 based on the current market price of unrestricted, free-trading common shares, in restricted shares of LiveWire stock (the "Restricted Stock"). (Am. Compl. Exh. A at p.1.) Pursuant to the terms of the Note, the Restricted Shares (250,000,000 shares at the $0.0002 common share stock price of freely-trading shares on the grant date) were to become freely tradeable on the Maturity Date. (Am Compl. ¶ 14 and Exh. A at p. 1.) However, given the amount of LiveWire stock that comprised the Restricted Stock (well over 10% of the issued and outstanding stock of LiveWire), Plaintiff would be deemed an affiliate of LiveWire, which would further limit its ability to sell the Restricted Stock to 1% of the outstanding shares per quarter and further reduce any value it may have had if any according to well established evaluation systems and procedures.

**LVVV Breaches the Note**

LiveWire breached the terms of the Note in numerous respects. Despite the clear language of the Note, LiveWire failed to deliver the Restricted Stock upon the execution of the Note. (Am Compl. ¶ 19.) Moreover, despite repeated demands that LiveWire deliver the Restricted Stock to Plaintiff following the execution of the Note, Defendant failed and refused to deliver same. (Am Compl. ¶ 20.)

Further, Defendant failed to pay the $30,000, together with interest at the rate of 20% per annum on the Maturity Date. (Am Compl. ¶21.) Thereafter, despite due demand, LiveWire failed to and refused to pay any part of the sums due under the Note. (Am Compl. ¶ 23.)

Defendant's failure to deliver the Restricted Stock and to pay the principal and interest on the maturity date of the Note, constitute events of default under the Note. (Am Compl. Exh. A. § 4.)

## Argument

### POINT I

### STANDARDS ON A MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

In determining a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

As explained by the Supreme Court, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 ((2007)]). The plausibility standard does not impose a probability requirement, however. *See Iqbal*, 556 U.S. at 678. Indeed, a well-pleaded complaint may proceed even if proof of the facts alleged are improbable and that an ultimate recovery is unlikely. *See Twombly*, 550 U.S. at 556. *See also Augustine v. Cornell Univ*., 2016 WL 894533, at *3 (S.D.N.Y., Mar. 8, 2016).

As discussed below, the Amended Complaint more than adequately alleges viable causes of action.

### POINT II

### DEFENDANT FAILS TO ESTABLISH AS A MATER OF LAW THAT THE NOTE IS CRIMINALLY USURIOUS

Defendant contends that the Note is criminally usurious, and therefore void, because Plaintiff, as the lender, purportedly knowingly charged interest in excess of twenty-five percent

on the moneys loaned. (*See* Defendant's Mem. at 5-7). Defendant asserts that the twenty percent interest rate, taken together with the Restricted Stock which Plaintiff was entitled to (but never did) receive pursuant to the Note, demonstrates that the Note is usurious as a matter of law. Defendant is wrong.

New York's usury statutes were enacted "to protect desperately poor people from the consequences of their own desperation." *Carlone v. The Lion & The Bull Films, Inc*., 861 F. Supp.2d 312, 321 (S.D.N.Y. 2012) (citing *Siedel v. East 17th Street Owners, Inc*., 79 N.Y.2d 735, 740, 598 N.E.2d 7, 586 N.Y.S.2d 240 (1992)). While New York prohibits both civil and criminal usury, corporations, being the anthesis of "desperately poor people" may only assert criminal usury as a defense. *See Hillair Cap. Inv. LP v. Integrated Freight Corp*., 963 F. Supp.2d 336, 339 (S.D.N.Y. 2013). *See also* N.Y. Gen Oblig. L. § 5-521(3) (McKinney 2017); *Carlone*, 861 F. Supp.2d at 321 ("Corporations may not assert a civil usury defense in New York, but rather may only assert a criminal usury defense").

Under Section 190.40 of the Penal Law, a loan is criminally usurious when the lender "charges . . . as interest on the loan . . . a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period." N.Y. Penal L. § 190.40 (McKinney 2017). It is well-settled that usury is an affirmative defense, "and a heavy burden rests upon the party seeing to impeach a transaction by usury." *Costal Inv. Partners, LLC v. DSG Global, Inc*., 2018 WL 2744719, at *4 (S.D.N.Y., June 6, 2018). *See also Hillair Cap. Inv., LP*, 963 F. Supp.2d at 339 (same); *Union Cap. Funding LLC v. Vape Hold., Inc*., 2017 WL 1406278, at *4 (S.D.N.Y., Mar. 31, 2017) (same); *Gandy Mach., Inc. v. Pogue*, 106 A.D.2d 684, 483 N.Y.S.2d 744 (3d Dep't 1984) (same).

To establish a usury defense, a defendant must prove that the lender "(1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance." *Costal Inv. Partners, LLC*, 2018 W: 2744719, at *4. There is a strong presumption against finding a transaction criminally usurious, and the party asserting this defense must establish that the transaction was usurious by clear and convincing evidence. *See Zhavoronkin v. Koutmine*, 52 A.D.3d 597, 598, 860 N.Y.S.2d 561, 562 (2d Dep't 2008). *See also Lehman v. Roseanne Inv. Corp*., 106 A.D.2d 617, 618, 483 NY.S.2d 106, 108 (2d Dep't 1984) (Court noted that there is a strong presumption against the finding of a usurious intent).

As shown below, Defendant has not (nor can it on this motion to dismiss) establish that the Note was criminally usurious as a matter of law.

**A. The Note is Not Usurious on Its Face**

When a note is not usurious on its face, a court will not presume usury; rather, the party asserting the defense must prove all the elements. *Concord Fin. Corp. v. Wing Fook, Inc.*, 1997 WL 375679, at *5 (S.D.N.Y. July 7, 1997) (citations omitted). A promissory note is not criminally usurious on its face when it bears an interest rate lower than 25 percent. *See Union Cap. LLC v. Vape Hold. Inc*., 2017 WL 1406278, at *4 (S.D.N.Y., Mar. 31, 2017) (Court found that promissory note which bore a stated rate of interest of 8 percent was not usurious on its face although the defendant asserted there was "hidden interest" in the form of fees and discounted convertible stock); *Phlo Corp. v. Stevens*, 2001 WL 1313387, at *4 (S.D.N.Y. 2001) (Court held that note was not usurious on its face where stated interest rate was 14 percent, even though the defendant alleged the lender's entitlement to cashless warrants raised interest rate above legal limit), *aff'd*, 62 Fed. Appx. 377 (2d Cir. 2003). As explained by the court in *Union Capital*, when a promissory note is not usurious on its face:

> a court will not presume usury; rather the party asserting the defense of usury must prove all the elements. An essential element of the affirmative defense of usury is the lender's intent. Such intent . . . remains a question of fact and will not be presumed where a note states a legal rate of interest. . . . . The Court [must] turn[] to the substance of the transaction to determine whether the effective rate of interest exceeds 25%.

2017 WL 1406278, at *4.[2]

Here, the Note bears an interest rate of twenty percent (20%) per annum. Although the Note also provided shares equal to $50,000 worth of restricted stock that was based on the current market price of unrestricted, free-trading common shares, of LiveWire stock that was not the value of the stock that was to be received by Plaintiff. As discussed more fully below, Plaintiff was to receive restricted stock (which could not be sold for 6 months) which has a value substantially less than the market value. Accordingly, the Note, on its face, is not criminally usurious because evidence is required as to the valuation of the Restricted Stock. Thus, this Court should not presume criminal usury, and as a result, Defendant must meet its burden of establishing, by clear and convincing evidence, all of the elements of the usury defense. On the instant pre-answer motion to dismiss, Defendant cannot meet this burden as it has not (nor can it) present any evidence establishing the elements of usury, and the Court is limited to consideration of the Amended Complaint and the Note (which is annexed thereto). For this reason alone, LiveWire's motion to dismiss should be denied.

[2] *Funding Group, Inc. v. Water Chef, Inc.*, 19 Misc.3d 483, 852 N.Y.S.2d 736 (Sup. Ct. 2008) also cited by Defendant, is not binding on this Court, and was decided on summary judgment, not a motion to dismiss. Therefore, the plaintiff had the opportunity to submit evidence negating the application of the usury defense. *See id.* at 487, 852 N.Y.S.2d at 741. If this motion is granted, Plaintiff would be denied such opportunity.

**B. <u>There Are Issues of Fact Regarding the Interest Rate</u>**

While Defendant correctly asserts that stock may be included in determining what the actual rate of interest on the Note, the value of the Restricted Stock is an issue of fact that precludes dismissal at the pleadings stage. The cases cited by Defendant actually support the denial of a motion to dismiss a complaint based upon a usury defense.

While Defendant correctly asserts that the value of stock may be included in determining the actual rate of interest of a promissory note or other instrument (*see* Defendant's Mem. at 6.), the question of what the ***actual value*** of the Restricted Stock was at the time of the transaction creates an issue of fact which precludes dismissal under Rule 12(b)(6). For example, in *Sabella v. Scantek Medical, Inc*., 2008 WL 3233703 (S.D.N.Y., Sep. 25, 2009), the defendant raised a defense of criminal usury alleging that the value of the stock issued as part of certain loans rendered them criminally usurious. *Id.* at *17-20. The plaintiff claimed that the stock she was issued had no value. *Id.* at *21. The Court denied the defendant's motion for ***summary judgment***, finding that there were issues of fact regarding the value of stock that the plaintiff was issued as part of the consideration for the loans *Id.* at *21.

In *Hillair Capital Investment*, also cited by Defendant, the court did not find that a loan was usurious as a matter of law, but found that the defendant was entitled to amend its answer to assert the defense. In *Hillair*, the plaintiff loaned the defendant funds and as part of the consideration for the loans, the defendant issued the plaintiff shares of the defendant. 963 F. Supp.2d at 338. The stock was not registered under the Securities Act of 1933, and was therefore restricted. *Id.* After the plaintiff moved for summary judgment on the note, the defendant moved to amend its answer to assert the defense of usury. *Id.* at 339. The defendant

asserted that the sixteen (16%) percent interest rate on the notes was actually above twenty-five percent because the stock transactions helped "disguise the true value of the loans." *Id.*

The Court found that the value of the stock was critical in determining the initial loan amount and thus, the interest rate. *Id.* at 340. The Court further found that

> the fact that the stock was restricted, as well as whether the parties intended a usurious interest rate, must also be taken into account. *See* Rev. Rul. 77-287, 1997-2 C.B. 319 (1977) (outlining IRS's various methods for valuing restricted stock and noting that "restricted securities are generally issued at a discount from the market value of freely tradeable securities") (emphasis in original); *see also Phlo Corp. v. Stevens*, 00 Civ. 3619, 2001 WL 1313387, at *4 (S.D.N.Y., Oct. 25, 2001), *aff'd,* 62 Fed. Appx. 377 (2d Cir. 2003) (holding that where there is a possibility that the interest rate could exceed 25%, "the note is usurious only if both parties specifically intend for interest to be paid at a usurious rate"). Because it is possible that the interest rate on the loans could exceed 25% once the stock transactions are taken into account, [d]efendants are entitled to present the defense of usury.

*Id.*

More recently, this Court decided *Adar Bays, LLC v. Aim Exploration, Inc*., 285 F. Sup.3d 698 (S.D.N.Y. 2018), The defendant moved to dismiss on the pleadings under Rule 12(c), claiming that a 45 percent discount taken with respect to stock into which principal under a note was convertible rendered the note criminally usurious as a matter of law. The court disagreed, finding that the value of the stock was uncertain. The court noted that stock is not fully liquid and it cannot always be disposed of immediately. Further, there were numerous ways that no profit could be realized from the sale of such shares, including, the possibility that the price would decrease immediately, or that the defendant could immediately become delinquent in its SEC filings and become delisted, experience decreases in stock price and no demand. *Id.* at 702-03. Therefore, the court held that the plaintiff stated "a plausible claim that a right to convert loan principal into shares, even at a fixed percentage discount, is materially more

uncertain than the right to receive cash and therefore should not be considered as interest in a usury calculation." *Id.* at 703.

Here, as in the above cases, there is an issue of fact as to the value of the Restricted Shares that makes dismissal at the pleadings stage inappropriate. The Note specifically provides that Plaintiff was to receive restricted stock , and therefore, was subject to a 6-month restriction on sale. As discussed in *Hillair Capital Investments*, the value of restricted shares is generally lower than freely tradeable shares. Indeed, Restricted Stock could not be sold for a six-month period in the case of a fully reporting public company fully compliant with its ongoing '34 Act reporting obligations. Here, because Plaintiff was receiving more than 10 percent of the issued and outstanding stock of LiveWire, Plaintiff would have been deemed an affiliate, which would further limit Plaintiff's ability to sell the Restricted Shares after the 6-month period expired. As in *Adar*, there were significant risks associated with Restricted Stock because a number of events could occur during the restricted period that would have a negative effect on the value of the stock. Such risks must be taken into consideration when determining the value thereof. For example, there was a risk that the Restricted Stock could not be disposed of immediately due to low trading volume and lack of liquidity, or that during the 6-month restricted period, LiveWire could become delinquent in its filings with SEC, and cease trading. Additionally, there was a risk that LiveWire's stock could experience a significant decline in value.[3] All of these factors must be taken into consideration when determining the value of the Restricted Stock (for which expert

[3] It is also important to emphasize that certain of such risks became reality. For example, Defendant ceased making its required filings with the SEC in March, 2016, and ultimately filed a Form 15 in June 2017to terminate its reporting obligations. As a result of the foregoing, the restriction period became longer because LiveWire was considered a non-reporting shell company no longer reporting with the SEC. This filing, together with Livewire's filings, may be accessed at the following web address: https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001421289&type=&dateb=&owner=include&count=40. *See, City of Austin Police Retirement System v. Kinross Gold Corp.*, 957 F.Supp.2d 277, 287 (S.D.N.Y. 2013) (Court may consider legally required public disclosure documents filed with the SEC in evaluation of a motion to dismiss.)

testimony will be required). *See Phlo Corp*., 2001 WL 1313387, at *5 (Court found criminal usury defense improper where it was not clear that an interest rate in excess of 25% would ever have been paid because the value of the warrants issued to the lender was uncertain); *Hornblower & Weeks, Inc. v. Blue Martin Breweries, Inc*., 2000 WL 1371329, at *6-7 (S.D.N.Y., Sep. 22, 2000) (Court denied the defendant's motion for summary judgment on criminal usury defense, finding there was an issue of fact as to the value of the stock, and therefore, whether the plaintiffs had the intent to charge a usurious rate of interest). Defendant has not at this juncture provided any competent valuation of the Restricted Stock that would support a finding as a matter of law that the transaction was criminally usurious.

As a result, the value of the Restricted Stock Cannot be determined as a matter of law, and Defendant cannot establish, as a matter of law, that Plaintiff intended to take an interest rate in excess of 25 percent. Consequently, Defendant's motion to dismiss must be denied.

### C. Plaintiff Will Assert that Defendant is Estopped From Raising Criminal Usury as a Defense to Enforcement of the Note

Given the fact that this is a motion to dismiss, Plaintiff is unable to submit evidence to demonstrate that Defendant should be estopped from asserting criminal usury. However, the Court should note that if this motion is denied, Plaintiff will assert that Defendant should be estopped from asserting the defense.

Under New York law, a borrower may be estopped from asserting a usury defense when, through a special relationship with the lender, the borrower induces reliance on the legality off the transaction. *See Sabella*, 2009 WL 3233703, at *23. Otherwise, a borrower could void a transaction, realizing a windfall, at the expense of an innocent person. *Carlone*, 861 F. Supp.2d at 322.

Plaintiff intends to assert that a special relationship existed between Plaintiff's principal and LiveWire's president, that LiveWire offered the Restricted Stock as a substitute for a personal guaranty of its president, and that LiveWire induced Plaintiff's reliance on the legality of the transaction. Plaintiff should be permitted the opportunity to develop this claim, as well as permitted the opportunity to present evidence of the true value of the Restricted Stock.

## **Conclusion**

For all the foregoing reasons, Defendant's motion to dismiss, pursuant to Rule 12(b)(6) should be denied in its entirety. In the event that the Court grants any portion of this motion, Plaintiff respectfully requests that the Court grant leave to Plaintiff to serve a Second Amended Complaint.

Dated: New York, New York
June 29, 2018

CARMEL, MILAZZO & DiCHIARA LLP

By: /s/
Christopher P. Milazzo
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0458 (tel.)
(646) 838-1314 (fax)
cmilazzo@cmdllp.com