UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN E GROUP LLC,<br><br>                            Plaintiff,<br><br>  -against-<br><br>LIVEWIRE ERGOGENICS, INC.,<br><br>                           Defendant. | **Case No. 1-18-cv-03969**<br>**(Woods)** |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT LIVEWIRE ERGOGENICS, INC.'s MOTION TO DISMISS AMENDED COMPLAINT

Defendant Livewire Ergogenics, Inc. ("Livewire" or "Defendant") respectfully submits this reply memorandum of law[1] in further support of its motion to dismiss plaintiff American E Group LLC's ("American E" or "Plaintiff") amended complaint dated May 9, 2018 (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6), and for any such other and further relief as the Court deems just and proper (the "Motion").

### I.    PRELIMINARY STATEMENT

The Note and the Amended Complaint demonstrate that Plaintiff knowingly charged Livewire an interest rate that vastly and unquestionably exceeded twenty-five percent (25%) of the $30,000 loaned amount. The loan transaction is criminally usurious, void, and uncollectible.

---

[1] Unless otherwise stated, any and all capitalized terms herein shall have the same meanings ascribed to them in the Memorandum of Law In Support Of Defendant Livewire Ergogenics, Inc.'s Motion To Dismiss Amended Complaint dated June 8, 2018 (*see* ECF No. 23, "Def. Moving Memo").

1

In opposition to the Motion[2], Plaintiff fails to provide any legal authority to dispute that the Loan was not criminally usurious (and thus void) under New York law. Plaintiff attempts to create an ambiguity where none exists by arguing there are issues of fact regarding the value of the restricted stock to be transferred pursuant to the terms of the Note. This argument is frivolous for at least two reasons.

First, the Note (which was filed as an exhibit to the Amended Complaint[3]) expressly provides that Plaintiff was to receive from Livewire restricted shares of stock worth $50,000 *at the time of the Loan*. The Note is not ambiguous – the value of the restricted stock Plaintiff was to receive is clearly set forth in the Note. There is no need to obtain evidence regarding the value of the restricted stock, because whatever the value (*i.e.,* whether $1.00 or $0.0002 per share), the Note required Livewire to transfer a total amount of shares "equal to $50,000." Pl. Opp. Memo, p. 7.

Second, the Amended Complaint (ECF No. 7) repeatedly sets forth the value of the Shares and the amount of restricted stock to be transferred by Livewire pursuant to the terms of the Note. Specifically, Paragraph 15 of the Amended Complaint states:

> On November 17, 2015, [Livewire]'s stock traded for the amount of $0.0002 per share. Accordingly, <u>Plaintiff was entitled to receive 250 million shares of [Livewire] restricted common stock as Consideration Shares pursuant to the terms of the Note.</u>

(Emphasis added.) *See also*, Amended Complaint, ¶¶ 1, 2 and 20.

Indeed, Plaintiff's second claim for relief seeks a judgment "directing that Defendant immediately issue and deliver 250 million freely tradeable shares of its

---

[2] *See* ECF No. 25, Plaintiff American E Group LLC's Memorandum of Law In Opposition to Defendant Livewire Ergogenics, Inc.'s Motion to Dismiss dated June 29, 2018 ("Pl. Opp. Memo").

[3] *See* ECF No. 7-1, the "Note".

common stock to Plaintiff….." p. 8 ¶ (b). Plaintiff's newly minted argument that discovery is required to determine the value of the Shares is specious and contrary to Plaintiff's allegations in the Amended Complaint.

Based upon the foregoing, there is no question as to the value of stock Plaintiff was to receive at the time the Loan transaction took place.

## II. ARGUMENT

### A. The Motion Must Be Granted Because The Note Is "Criminally Usurious" On Its Face

As previously set forth in the Motion, if usury can be gleaned from the face of the loan instrument itself, intent to take interest in excess of the legal rate "will be implied and usury will be found as a matter of law." *Blue Wolf Capital Fund II, L.P. v. American Stevedoring Inc.,* 105 A.D.3d 178, 184 (1st Dep't 2013) (finding intent to take excessive interest in violation of usury statute from the "four corners" of the loan agreement). Courts look not to form but to substance or "real character" to determine whether a transaction is usurious. *See O'Donovan v Galinski*, 62 A.D.3d 769, 769-770 (2d Dep't 2009).

Here, it is easily discerned from the four corners of the Note that Plaintiff's intent was to exact an interest rate well beyond twenty-five percent (25%), because the $50,000 worth of restricted stock constitutes "additional interest" within the meaning of the usury statutes. Plaintiff concedes that this Court may take into consideration the value of the restricted stock ($50,000) *at the time of the Note* in determining whether the actual rate of interest on the Note exceeded twenty-five percent (25%), and thus was usurious under New York law. (*See* Pl. Opp. Memo, p. 8). Therefore, the facially usurious loan agreement is in violation of Penal Law § 190.40 and should be declared void *ab initio*.

3

*See Szerdahelyi v Harris,* 67 N.Y.2d 42 (1986);[4] *see also, Densen v Ahsley,* 2011 WL 1527198, 2011 NY Slip Op 30998 (N.Y. Sup. Ct. Apr. 15, 2011) ("[I]t has been held that loans which are criminally usurious, i.e. in violation of Penal Law 190.40 are void *ab initio* preventing the lender from recovering either the principal or the interest…Therefore, the Note, as amended, is in violation of Penal Law 190.40 and was void *ab initio.*").

In opposition to the Motion, Plaintiff argues that there are open questions of fact for the Court to resolve as to whether or not the Note was criminally usurious. Specifically, Plaintiff argues the Note is not criminally usurious on its face because the $50,000 worth of stock Plaintiff was entitled to receive was "restricted" and thus had an actual value "substantially less" than the current market price of unrestricted, free-trading common shares. (Pl. Opp. Memo, at pp. 8-9). Plaintiff's argument is without merit.

Here, it is indisputable from the Note itself that Plaintiff required Livewire to issue $50,000 worth of restricted shares of Livewire's common stock as "additional consideration" for the Loan. While the Note "facially" provides an interest rate at 20% per annum, when considering the $50,000 of restricted stock to be issued, Plaintiff undoubtedly intended to charge a usurious rate. Plaintiff's argument that evidence is required as to the actual value of the Restricted Stock at the time of the Loan is belied by the express terms of the Note, which provided that Plaintiff was to receive restricted shares of Plaintiff's stock with a value "equal to $50,000" upon the parties' execution of the Note. (*See* Amended Complaint, Ex. A.)

In the Motion, Livewire cites *Sabella v. Scantek Med., Inc.,* 08 Civ. 453, 2009

---

[4] As stated by the Court of Appeals in *Szerdahelyi v Harris,* "when a court deems a transaction to be usurious, it must declare the transaction and its supporting documents void, enjoining prosecution on them and order that all documents and collateral be canceled and surrendered". 67 N.Y.2d at 48.

4

WL 3233703, at *17–22 (S.D.N.Y. Sept. 25, 2009) and *Hillair Capital Investments, L.P. v. Integrated Freight Corp.,* 963 F.Supp.2d 336 (S.D.N.Y. 2013), which cases establish that this Court must consider the $50,000 stock transaction in determining whether the Note charges a criminally usurious interest rate. (*See* Def. Moving Memo, p. 6). Plaintiff relies on *Sabella* and *Hillair* to support its position that the value of the restricted Shares is "an issue of fact that precludes dismissal at the pleadings stage." (Pl. Opp. Memo, p. 8). For the purposes relied upon by Plaintiff, the loans in *Sabella* and *Hillair* are clearly distinguishable from the Note at bar.

In *Sabella*, the plaintiff made a loan to the defendant in exchange for a promissory note, and as additional consideration, plaintiff was entitled to receive shares of defendant's common stock as reflected in a Subscription Agreement. 2009 WL 3233703, at *17–22. Unlike the case at bar, the promissory note in *Sabella* did not facially identify the *actual* value of the total amount of shares the plaintiff was to receive at the time of the loan transaction.[5] Here, Plaintiff cannot argue in good faith that the Shares to be issued pursuant to the Note had no value at the time of the Loan. *Id.* at *21. Such an argument is contrary to (i) the express terms of the Note, which required $50,000 worth of restricted shares of Livewire's stock to be transferred to Plaintiff; and (ii) the Amended Complaint, which alleges that Livewire was "obligated to issue shares of LVVV restricted common stock having a value of $50,000 (which equaled 250 million shares…)." *See* Amended Complaint, ¶ 1.

---

[5] In *Sabella*, the loan transaction provided that plaintiff was entitled to receive 6% of the defendant's shares, and "there was a disputed issue of fact over how much stock that was, which means the motions for summary judgment have to be denied…." *Id.* at *18.

Similarly, in *Hillair,* a defendant agreed to issue 500,000 shares of its restricted common stock to plaintiff as additional consideration for two separate loans.  963 F.Supp.2d at 338.  The *Hillair* court determined that the fact the stock was restricted must be taken into account in determining usury, and thus, because there was only a possibility that the interest rate on the loans could exceed 25% once the stock transactions are taken into account, there was an issue of fact as to whether the loans were usurious.  963 F. Supp. 2d 336.

The loan instrument in *Hillair* is materially distinguishable from the Note because it only set forth the number of shares to be transferred (*i.e.,* a total of 953,030 restricted shares), which raised an issue of fact concerning the value of those restricted shares. Here, the Note provided for the transfer of $50,000 worth of Restricted Shares upon execution; thus, determining how many restricted shares would need to be transferred to constitute $50,000 worth of shares is merely a matter of arithmetic.[6]  In any event, Plaintiff has already done the math.  The Amended Complaint repeatedly states that Livewire was required to issue to Plaintiff 250 million restricted shares of stock. Plaintiff's own pleadings establish that there is no issue of fact concerning the value of the Shares.

Plaintiff also improperly cites *Adar Bays, LLC v. Aim Exploration, Inc*., 285 F. Supp. 3d 698 (S.D.N.Y. 2018) to support its conclusory argument that an issue of fact exists because the value of the restricted stock is uncertain.  (Pl. Opp. Br., pp. 9-10).  The facts at bar, however, are readily distinguishable from *Adar Bays*, which case involved a plaintiff's right to convert portions of the Note's principal and interest into shares of

---

[6] The arithmetic is irrelevant because whether the restricted shares are valued at $1.00 per share or $0.0002 per share, the Note required Livewire to transfer $50,000 worth of restricted stock.

common stock at a "discounted" rate from the future market price of the stock -- which is inherently uncertain.

At bar, there is no uncertainty.  Plaintiff was to receive, as additional consideration for a $30,000 loan (with 20% per annum interest), restricted shares of Livewire's stock "equal to" $50,000.  The Note does not provide Plaintiff with a right to convert loan principal into shares on a later date, but rather, requires the payment of $50,000 worth of Livewire's restricted stock at the time of execution of the Note.

**B.**      **PLAINTIFF HAS NOT ALLEGED A SPECIAL RELATIONSHIP**

The Amended Complaint does not allege (or even imply) the existence of a special relationship whereby Livewire somehow induced Plaintiff into believing the Note was not usurious.  Nevertheless, Plaintiff argues in short shrift fashion, for the first time, that there existed a special relationship between Plaintiff's principal and Livewire's president.[7]  *See* Pl. Opp. Memo., pp. 11-12.   If Plaintiff believed there was a special relationship, it was required to plead such a relationship in its Amended Complaint (or seek leave from the Court to amend its Amended Complaint).  Plaintiff's reliance on a vague reference to an unpled "special relationship" in its opposition memorandum of law cannot be the basis to defeat the Motion.  *Dietrich v. Bauer,* 76 F. Supp. 2d 312, 328 (S.D.N.Y. 1999) (finding, "facts that are offered [in plaintiff's opposition to a motion to dismiss] but that do not appear in the Amended Complaint will not be considered.").

---

[7] While irrelevant for purposes of the instant Motion, it is ironic that Plaintiff would allege that it was induced by Livewire to execute the Note.  Plaintiff's principal, Elana Hirsch is the wife of Sunny Barkats, who was retained by Livewire to negotiate the terms of the Note with Plaintiff.  While there was a special relationship breached in connection with this transaction, it was JS Barkats' fiduciary relationship owed to Livewire.

## CONCLUSION

For all the reasons set forth above, it is respectfully submitted that the Court grant the Motion and award Livewire such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 6, 2018

Respectfully submitted,

**GUSRAE KAPLAN NUSBAUM PLLC**

By: /s/ Ryan J. Whalen
Ryan J. Whalen, Esq.
*Attorneys for Defendant*
*Livewire Ergogenics Inc.*
120 Wall Street
New York, New York 10005
(212) 269-1400
Email: rwhalen@gusraekaplan.com

8