```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
    AMERICAN E GROUP LLC,                       :
                                                :
                              Plaintiff,        :
              -v-                               :       1:18-cv-3969-GHW
                                                :
    LIVEWIRE ERGOGENICS INC.,                   :       MEMORANDUM OPINION
                              Defendant.        :           AND ORDER
-------------------------------------------------------------X
```

GREGORY H. WOODS, United States District Judge:

Defendant Livewire Ergogenics Inc. borrowed $30,000 from American E Group LLC. In exchange, Defendant agreed to repay the loan in full in six months at an annual interest rate of 20%. Defendant also agreed to issue Plaintiff $50,000 worth of Defendant's stock as additional consideration for the loan. Defendant failed to either issue the stock or pay the loan, and now argues that the implied interest rate of the loan is criminally usurious, and, thus, that the promissory note representing the loan is void. Both parties agree that the value of the stock Defendant was required to deliver as consideration for the loan can be considered to determine whether the effective interest rate on the loan exceeds the 25% cap imposed by New York's criminal usury statute.

The parties' briefing focuses on the question of whether the value of the stock can be ascertained as a matter of law on a motion to dismiss. Defendant argues that the value of the consideration is plain from the face of the parties' note; Plaintiff argues that valuation of the stock raises a question of fact not suitable for resolution in a motion to dismiss. But the motion to dismiss must be denied for a reason that was not addressed by the parties at all in their briefing. Because the promissory note contains an express cap on the maximum interest that Plaintiff can

collect, the Court cannot determine that it is criminally usurious on its face. As a result, Defendant's motion to dismiss is DENIED.

I.    **BACKGROUND**

Defendant Livewire Ergogenics Inc. is a publicly-traded corporation that develops nutritional products. Am. Compl. (ECF No. 7) ¶ 9. In 2015, Defendant sought capital to fund its operations. *Id.* ¶ 10. Defendant was introduced to Plaintiff in November of that year, and asked it for a loan. *Id.* ¶ 11. Plaintiff agreed, and that same month, loaned Defendant $30,000, which was disbursed directly to Defendant and certain of its representatives. *Id.* ¶ 12.

In connection with the loan, Defendant executed a promissory note (the "Note"), dated as of November 17, 2015, in favor of Plaintiff. *Id.* Ex. A. In the Note, Defendant promised to repay the principal amount of the loan six months after the date of the Note (the "Maturity Date"). Defendant also agreed to pay interest on the Note at a rate of 20% per annum, due in full on the Maturity Date. Note at 1.

The Note also required Defendant to pay additional consideration for the loan through the issuance of stock to Plaintiff. The Note provided that

> Moreover, as additional consideration for this Note, the Borrower will give to the Lender restricted shares of the Borrower equal to US$50,000.00 (the "Restricted Shares") that will be convertible to freely tradeable shares on the Maturity Date. The Borrower will provide to the Lender, at the Borrower's expense, an opinion of counsel stating that, on the Maturity Date, the Restricted Shares are freely transferrable pursuant to SEC Rule 144A . . . .

*Id.*

The Note set forth a number of events of default and described the consequences of those defaults. Note § 4. Failure by Defendant to pay the principal and interest on the Note within 30 days after the Maturity Date constituted an event of default. The Note included a particularly rich bounty for Plaintiff following the occurrence of such a default: "if an Event of Default shall occur,

then the Restricted Shares shall be freely transferable and this Note shall be immediately convertible to ten (10) times the liquidated value of the Indebtedness." *Id.*[1]

The Note contained a cap on the maximum interest rate that could be charged pursuant to its terms. Section 5 reads as follows

> **Maximum Interest Rate:** In no event shall any agreed to or actual interest charged, reserved or taken by the Lender as consideration for this Note exceed twenty percent (20%). In the event that the interest provisions of this Note shall result at any time or for any reason in an effective rate of interest that exceeds twenty percent (20%), then without further agreement or notice the obligation to be fulfilled shall be automatically reduced to such limit and all sums received by the Lender in excess of those lawfully collective as interest shall be applied against the principal of this Note immediate upon the Lender's receipt thereof . . . .

*Id.* § 5.

Section 7 of the Note expressly provided for the severability of unenforceable provisions of the Note. The relevant language from the Note is quoted below.

> **Severability:** If any provision of this Note is, for any reason, invalid or unenforceable, the remaining provisions of this Note will nevertheless be valid and enforceable and will remain in full force and effect. Any provision of this Note that is held invalid or unenforceable by a court of competent jurisdiction will be deemed modified to the extent necessary to make it valid and enforceable and as so modified will remain in full force and effect.

*Id.* § 7. The Note is governed by New York law. *Id.* § 14.

Defendant never issued the Restricted Shares to Plaintiff as required by the terms of the Note. Am. Compl. ¶ 19. Nor did Defendant pay the principal and interest outstanding under the Note on the Maturity Date; it has not paid to date. *Id.* ¶¶ 21, 23. As a result, Plaintiff—out $30,000—brought this suit seeking $330,000 (representing the principal amount of the Note, plus a

---

[1] Defendant asserts that it was represented by JS Barkats, PLLC as counsel in connection with its negotiation of these Plaintiff-favorable terms. Opp. at 2 n.3. According to Defendant, Sunny Barkats is the principal of that firm. *Id.* Defendant asserts that Mr. Barkats is the husband of the sole equity owner of Plaintiff. *Id.* Defendant states that it was not aware of its lawyer's relationship with the lender at the time that the loan was negotiated and that "the criminal usurious interest rate set forth in the Note was the result of [Mr. Barkats'] sham 'negotiations' with his wife (or himself)." *Id.* The Court does not consider these assertions in its evaluation of this motion, but notes them to provide context for the reader.

1,000% default balloon payment) *plus* delivery of 250 million freely tradeable shares of Defendant's common stock. *Id.* at 8.

## II. PROCEDURAL HISTORY

Plaintiff initiated this action on May 3, 2018, ECF No. 1, and filed the governing amended complaint just seven days later, on May 10, 2018. Am. Compl. (ECF No. 7). Defendant filed its motion to dismiss on June 8, 2018. ECF No. 22. The motion argues that the Note is "criminally usurious" under New York law, and, therefore, void and unenforceable. Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") (ECF No. 23) at 2. Plaintiff filed its opposition on June 29, 2018. ("Opp.") (ECF. No. 25). Defendant filed its reply on July 6, 2018. (ECF. No. 26).

## III. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). However,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79, and courts need not give "credence to plaintiff's conclusory allegations." *Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (internal quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do . . . .").

The Note is governed by New York law. Note § 14. Under New York law, the "fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Id.* (internal quotation marks and citation omitted). "Thus, a written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms." *Id.*; *see South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (2005) ("In cases of contract interpretation, it is well settled that when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms." (internal quotation marks and citation omitted)).

"In a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (quoting *Krumme v. West Point Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)). The question of "[w]hether or not a writing is ambiguous is a question of law to be resolved by the courts." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) (citation omitted). "It is well settled that a contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin Corp.*, 639 F.3d at 69 (citations omitted). "Conversely, . . . the language of a contract is ambiguous if it is capable of more than one

meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Id. at 69.

## IV. DISCUSSION

### a. But for Section 5, the Note is Criminally Usurious on its Face

The parties agree that if the interest rate charged on the Note is usurious in violation of New York Law, it is void and unenforceable.[2] *See* Opp. at 5–6. New York's civil usury restrictions forbid charging interest at a rate in excess of 16% annually. *See* N.Y. Gen. Oblig. Law §§ 5-501(1)–(2); N.Y. Banking Law § 14-a(1). As a general matter, however, corporations and limited liability companies may not assert a civil usury defense. N.Y. Gen. Oblig. Law § 5–521(1); N.Y. Limit. Liab. Co. § 1104(a). However, limited liability companies, such as Defendant here, are not barred from raising criminal usury as an affirmative defense. N.Y. Gen. Oblig. Law § 5–521(3); N.Y. Limit. Liab. Co. § 1104(c).

Under Section 190.40 of New York's Penal Law, a loan is criminally usurious when the lender "charges . . . as interest on the loan . . . a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period." N.Y. Penal L. § 190.40 (McKinney 2017). "Criminal usury requires proof that the lender (1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance." *Hufnagel v. George*, 135 F. Supp. 2d 406, 407 (S.D.N.Y. 2001) (quoting *In re Venture Mortg. Fund, L.P.*, 245 B.R. 460, 473–74 (Bankr. S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002)).

---

[2] The Second Circuit has noted in dicta that "it appears from a close reading of the complex and cross-referencing statutes that compose New York's usury law that the voiding provision only operates to void loans that violate the civil usury statute—a statute that by its terms applies only to loans of less than $250,000 (with interest in excess of 16%)—and might not operate to void a loan of $250,000 or greater even if such loan's annual interest rate exceeds 25% and is therefore criminally usurious." *In re Venture Mortg. Fund, L.P.*, 282 F.3d 185, 189 (2d Cir. 2002). Neither party suggests that the voiding provision of the civil usury statute does not apply to this $30,000 loan.

"Usury is an affirmative defense and a heavy burden rests upon the party seeking to impeach a transaction for usury." *Gandy Mach. Inc. v. Pogue*, 483 N.Y.S.2d 744, 745 (3d Dep't 1984) (citations omitted). "An essential element of the affirmative defense of usury is the lender's usurious intent," and "[s]uch intent . . . remains a question of fact and will not be presumed where a note states a legal rate of interest." *Concord Fin. Corp. v. Wing Fook, Inc.*, No. 96 CIV. 5293 (DLC), 1997 WL 375679, at *5 (S.D.N.Y. July 7, 1997). Yet, the defense of usury does not require proof of specific intent: "[a] loan is usurious if the lender intends to take and receive a rate of interest in excess of that allowed by law even though the lender has no specific intent to violate the usury laws." *In re Mortgage Fund, L.P.*, 282 F.3d 185, 188 (2d Cir. 2002) (quoting *Hammon v. Marrano*, 451 N.Y.S.2d 484, 485 (4th Dep't 1982)).

To determine whether the interest rate charged on the Note is criminally usurious in violation of Section 190.40, the Court is not limited to looking only at the Note's stated rate of interest, here 20%. Instead, the Court may consider "the substance of the transaction to determine whether the effective rate of interest exceeds 25%." *Union Capital LLC v. Vape Holdings Inc.*, No. 16-cv-1343 (RJS), 2017 WL 1406278, at *4 (S.D.N.Y. Mar. 31, 2017); *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*, 961 N.Y.S.2d 86, 89 (1st Dep't 2013) ("To determine whether a transaction is usurious, courts look not to its form but to its substance or real character. If an instrument provides that the creditor will receive additional payment in the event of a contingency beyond the borrower's control, the contingent payment constitutes interest within the meaning of the usury statutes . . . .").

The parties correctly agree that the Court should consider the value of the Restricted Stock to determine whether the Note's terms are criminally usurious. *See* Opp. at 8 (" . . . Defendant correctly asserts that the value of stock may be included in determining the actual rate of interest of a promissory note or other instrument . . ."); *see also Hillair Capital Inv., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 340 (S.D.N.Y. 2013) ("Defendants are correct that the stock payment should

7

be taken into consideration in determining the interest rate."); *Sabella v. Scantek Med., Inc.*, No. 08 CIV. 453(CM)(HBP), 2009 WL 3233703, at *17 (S.D.N.Y. Sept. 25, 2009) (holding that the value of common stock given to the lender should be taken into account when determining the loan's interest rate). Where the parties disagree is whether the value of the Restricted Stock presents a question of fact that is incapable of resolution in the context of a motion to dismiss. For the reasons that follow, the Court concludes that the value of the Restricted Stock—and therefore the implied interest rate for the Note—can be determined as a matter of law from the face of the Note.

Plaintiff argues that the valuation of the Restricted Stock to be received by Plaintiff pursuant to the Note is uncertain, giving rise to a question of fact that cannot be resolved in the context of a motion to dismiss. Opp. at 7. Plaintiff argues that the Note is not criminally usurious on its face because additional evidence is required to ascertain the actual value of the stock. *Id.* And, indeed, when the value of such consideration is unclear from the face of the transaction documents, the criminal usury defense cannot be established on the basis of the pleadings. *See Phlo Corp. v. Stevens*, 00-cv-3619 (DC), 2001 WL 1313387, at *5 (S.D.N.Y. Oct. 25, 2001) (holding that usury defense was improper because "it is far from clear, in light of the numbers and the circumstances, that the effective interest rate would exceed 25% in any event."); *Sabella*, 2009 WL 3233703, at *20 ("Plaintiffs' entitlement to Scantek common stock for making the August 2002 loan does not, by itself, make the loan usurious. For that to be so, the value of the shares for the loan must cause the return on the loan to exceed 25%. The parties disagree about the value of the shares issued.")

Here, however, the value of the Restricted Stock to be provided pursuant to the Note is unambiguous. The Note states that, "as additional consideration for this Note, [Defendant] will give to [Plaintiff] restricted shares of [Defendant] equal to $50,000 . . . that will be convertible to freely tradeable shares on the Maturity Date." Note at 1. Plaintiff was clearly entitled to receive Restricted Stock with a value of $50,000 on the date of issuance—not a particular number of shares with an

estimated value as of either the date of issuance or the Maturity Date. Plaintiff's arguments that the value of the Restricted Shares might have changed following the date of their issuance are not pertinent. The Note called for Plaintiff to be provided assets worth $50,000 as consideration for the loan. *Id.* The monetary value of the Restricted Stock to be delivered pursuant to the Note is unambiguous, therefore the implied interest rate can be determined from the face of the Note. If the analysis ended there, the implied interest rate of the Note would greatly exceed 25% and the Note would be criminally usurious and void.

### b. Section 5 of the Note Limits Its Effective Interest Rate

But the analysis does not end there. Oddly, neither party discusses the impact of Sections 5 and 7 of the Note in their briefing.[3] But the Court cannot ignore them. As noted above, Section 5 of the Note states that "[i]n the event that the interest provisions of this Note shall result at any time or for any reason in an effective rate of interest that exceeds twenty percent (20%), then without further agreement or notice the obligation to be fulfilled shall be automatically reduced to such limit . . . ." Note § 5. The value of the Restricted Stock grant results in an effective rate of interest under the Note that exceeds 20% for purposes of the usury analysis.[4] Therefore, pursuant to the Note's express terms, that component of the consideration for the Note must be eliminated in order for the effective rate of the Note not to exceed 20%. Given that Plaintiff agreed to cap the effective rate of interest on the Note at 20%, the Court cannot conclude from the face of the Note that Plaintiff intended to charge a criminally usurious rate of interest.[5]

---

[3] Both parties may have had an incentive to avoid flagging this issue: it deprives both of what may be their preferred home run outcome. For Defendant, acknowledging the existence and effect of this provision undermines the criminal usury argument that might have the effect of voiding the Note in its entirety. For Plaintiff, the provision can be read— as the Court has—to limit the amount that it can seek to recover under the Note.

[4] This would be the case in all circumstances in which the value of the Restricted Stock is greater than $0.00.

[5] The parties' briefing also does not address the effect of Section 7 of the Note. Here, but for the effect of Section 5 of the Note, the requirement that Defendant provide Plaintiff with the Restricted Stock would render the Note criminally usurious and, thus, unenforceable. An argument might be presented that Section 7 of the Note, like Section 5, has the effect of nullifying Defendant's obligation to provide the Restricted Stock. But because the parties have not presented argument on that point, the Court will not address it. Nor in the absence of briefing will the Court discuss the

## V. CONCLUSION

Given that the Note expressly caps the interest that can be recovered under its terms, the Court cannot determine from its face that it is criminally usurious. Therefore, Defendant's motion to dismiss is DENIED.

The Clerk of the Court is directed to terminate the motion pending at ECF No. 22.

SO ORDERED.

Dated: October 27, 2018
New York, New York

GREGORY H. WOODS
United States District Judge

---

enforceability of the provision of the Note requiring that Defendant pay a balloon amount 10 times the principal amount of the Note in the event of a payment default.