UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN E GROUP LLC,<br><br>                Plaintiff,<br>     -against-<br><br>LIVEWIRE ERGOGENICS, INC.,<br><br>                Defendant. | 1-18-cv-03969-GHW |
| LIVEWIRE ERGOGENICS, INC.,<br><br>                Counterclaim Plaintiff/<br>                Third-Party Plaintiff,<br>     -against-<br><br>AMERICAN E GROUP LLC,<br><br>                Counterclaim Defendant,<br><br>ELANA HIRSCH A/K/A ELANA MICHELLE<br>HIRSCH A/K/A ELANA BARKATS, JSBARKATS<br>PLLC and SUNNY JOSEPH BARKATS A/K/A<br>SANNY JOSEPH BARKATS,<br><br>                Third-Party Defendants. | |

**DEFENDANT LIVEWIRE ERGOGENICS INC.'S
ANSWER, AFFIRMATIVE DEFENSES,
<u>COUNTERCLAIMS AND THIRD-PARTY COMPLAINT</u>**

Defendant Livewire Ergogenics, Inc. ("Defendant" or "Livewire"), by and through its attorneys, Gusrae Kaplan Nusbaum PLLC, as and for its answer to the amended complaint dated May 9, 2018 (the "Amended Complaint[1]") of plaintiff American E Group LLC ("American E" or "Plaintiff"), hereby states as follows:

---

[1] *See* ECF No. 7.

1.     Defendant admits that Plaintiff seeks to enforce a promissory note executed by and between Plaintiff and Defendant on November 17, 2015 (the "Note").  Defendant denies the remaining allegations contained in Paragraph "1" of the Amended Complaint.

2.     Defendant denies each and every allegation contained in Paragraph "2" of the Amended Complaint.

3.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "3" of the Amended Complaint, and therefore denies same.

4.     Defendant admits the allegations contained in Paragraph "4" of the Amended Complaint.

5.     The allegations in Paragraph "5" of the Amended Complaint constitute legal conclusions to which no response is required.

6.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "6" of the Amended Complaint, except admits that Livewire is a Nevada corporation and maintains a place of business in the State of California.

7.     The allegations in Paragraph "7" of the Amended Complaint constitute legal conclusions to which no response is required.

8.     The allegations in Paragraph "8" of the Amended Complaint constitute legal conclusions to which no response is required.

9.     Defendant admits the allegations contained in Paragraph "9" of the Amended Complaint.

10.    Defendant admits the allegations contained in Paragraph "10" of the Amended Complaint.

11.     Defendant admits the allegations contained in Paragraph "11" of the Amended Complaint.

12.     Defendant admits only the allegation contained in Paragraph "12" of the Amended Complaint that in or about November 2015, Plaintiff agreed to loan Defendant the sum of $30,000. Defendant denies that it received a loan of $30,000 from Plaintiff.  Defendant alleges that it retained JSBarkats PLLC ("JSB") in November 2015 to provide legal services and assist with financing on Defendant's behalf, and that JSB secured the deal between Plaintiff and Defendant. Defendant further alleges that Plaintiff only paid directly to Defendant $7,500 (of the $30,000 loan proceeds) and also paid $14,500 to JSB of the loan proceeds.

13.     Defendant admits only the allegation contained in Paragraph "13" that it entered into the Note on or about November 17, 2015, and respectfully refers the Court to the Note[2] for its terms and provisions.

14.     Defendant neither admits or denies the allegations contained in Paragraph "14" of the Amended Complaint, and respectfully refers the Court to the Note for its terms and provisions. Defendant also refers to the Court's Order dated October 29, 2018, whereby the Court determined that for purposes of a usury analysis, the Restricted Shares "component of the consideration for the Note must be eliminated in order for the effective rate of the Note not to exceed 20%."[3]

15.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "15" of the Amended Complaint, except denies that Plaintiff was entitled (or is now entitled) to receive 250 million shares of Livewire restricted common stock pursuant to the terms of the Note.

---

[2] *See* ECF No. 7, Exhibit ("Ex.") A.

[3] *See* ECF No. 28 at p. 9.

16. Defendant neither admits or denies the allegations contained in Paragraph "16" of the Amended Complaint, and respectfully refers the Court to the Note for its terms and provisions. To the extent that Plaintiff alleges this provision of the Note is enforceable, Defendant denies.

17. Defendant neither admits or denies the allegations contained in Paragraph "17" of the Amended Complaint, and respectfully refers the Court to the Note for its terms and provisions. To the extent that Plaintiff alleges this provision of the Note is enforceable, Defendant denies.

18. Defendant denies each and every allegation contained in Paragraph "18" of the Amended Complaint.

19. Defendant denies each and every allegation contained in Paragraph "19" of the Amended Complaint.

20. Defendant denies each and every allegation contained in Paragraph "20" of the Amended Complaint.

21. Defendant denies each and every allegation contained in Paragraph "21" of the Amended Complaint.

22. Defendant denies each and every allegation contained in Paragraph "22" of the Amended Complaint.

23. Defendant denies each and every allegation contained in Paragraph "23" of the Amended Complaint.

## FIRST CLAIM FOR RELIEF
(Enforcement of the Note – Money Damages)

24. In response to Paragraph "24" of the Amended Complaint, Defendant repeats and realleges each of the foregoing responses set forth in Paragraphs "1" through "23" above, as if fully set forth herein.

25.     Defendant admits the allegations contained in Paragraph "25" of the Amended Complaint.

26.     Defendant denies each and every allegation contained in Paragraph "26" of the Amended Complaint.

27.     Defendant denies each and every allegation contained in Paragraph "27" of the Amended Complaint.

28.     Defendant denies each and every allegation contained in Paragraph "28" of the Amended Complaint.

29.     Defendant denies each and every allegation contained in Paragraph "29" of the Amended Complaint.

30.     Defendant neither admits nor denies the allegations set forth in Paragraph "30" of the Amended Complaint, which purports to state a legal conclusion.  To the extent a response is required, Defendant denies the allegations contained in Paragraph "30" of the Amended Complaint.

## SECOND CLAIM FOR RELIEF
(Enforcement of Note – Specific Performance)

31.     In response to Paragraph "31" of the Amended Complaint, Defendant repeats and realleges each of the foregoing responses set forth in Paragraphs "1" through "30" above, as if fully set forth herein.

32.     Defendant admits the allegations contained in Paragraph "32" of the Amended Complaint only to the extent that it was fraudulently induced to enter into the Note, as alleged in Defendant's counterclaims.

33.     Defendant neither admits or denies the allegations contained in Paragraph "33" of the Amended Complaint, and respectfully refers the Court to the Note for its terms and provisions.

Pursuant to the Court's determination in the October 29, 2018 Order (ECF No. 28), Defendant denies that Plaintiff is entitled to the Restricted Shares.

34. Defendant denies each and every allegation contained in Paragraph "34" of the Amended Complaint. Pursuant to the Court's determination in the October 29, 2018 Order (ECF No. 28), Defendant denies that Plaintiff is entitled to the Restricted Shares.

35. Defendant denies each and every allegation contained in Paragraph "35" of the Amended Complaint. Pursuant to the Court's determination in the October 29, 2018 Order (ECF No. 28), Defendant denies that Plaintiff is entitled to the Restricted Shares.

36. Defendant denies each and every allegation contained in Paragraph "36" of the Amended Complaint. Pursuant to the Court's determination in the October 29, 2018 Order (ECF No. 28), Defendant denies that Plaintiff is entitled to the Restricted Shares.

37. Defendant neither admits nor denies the allegations set forth in Paragraph "37" of the Amended Complaint, which purports to state a legal conclusion. To the extent a response is required, Defendant denies the allegations contained in Paragraph "37" of the Amended Complaint and refers to the Court's determination in the October 29, 2018 Order (ECF No. 28).

## THIRD CLAIM FOR RELIEF
(Breach of Contract – Costs of Collection Under the Note)

38. In response to Paragraph "38" of the Amended Complaint, Defendant repeats and realleges each of the foregoing responses set forth in Paragraphs "1" through "38" above, as if fully set forth herein.

39. Defendant admits the allegations contained in Paragraph "39" of the Amended Complaint.

40. Defendant denies each and every allegation contained in Paragraph "40" of the Amended Complaint.

41.	Defendant neither admits or denies the allegations contained in Paragraph "41" of the Amended Complaint, and respectfully refers the Court to the Note for its terms and provisions.

42.	Defendant denies each and every allegation contained in Paragraph "42" of the Amended Complaint.

43.	Defendant neither admits nor denies the allegations set forth in Paragraph "43" of the Amended Complaint, which purports to state a legal conclusion.  To the extent a response is required, Defendant denies the allegations contained in Paragraph "43" of the Amended Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because material terms of the Note are grossly unreasonable, unconscionable, and therefore unenforceable.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff is barred from collecting any sums purportedly due under the Note because the interest rate charged thereunder exceeds twenty five percent (25%) per annum, and is thus criminally usurious (in violation of New York Penal Code § 190.40), void and unenforceable.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to join necessary and indispensable parties.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff is barred from any relief on the subject Note because the Note was procured through economic duress.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages were proximately caused by Plaintiff's own intentional fraudulent conduct and/or deceptive practices in connection with the Note, some of which are alleged in Defendant's counterclaims.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages were proximately caused by the intentional fraudulent conduct and/or deceptive practices of another third-party (or other parties) in connection with the Note, some of which are alleged in Defendant's counterclaims.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or limited by Plaintiff's breach of the covenant of good faith and fair dealing.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrines of waiver and/or ratification.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrine of laches.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were caused by its own failure to act.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the statute of frauds.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrine of accord and satisfaction.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to mitigate damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff may lack standing to assert the claims.

Defendant reserves the right to add additional Affirmative Defenses as may become apparent during discovery and disclosure.

**WHEREFORE**, Defendant prays that a judgment be entered herein:

(i)     Dismissing all causes of action in the Amended Complaint against Defendant; and

(ii)    Granting Defendant such other and further relief as the Court deems just and proper, together with costs, attorneys' fees and disbursements.

**COUNTERCLAIMS AND THIRD-PARTY CLAIMS
AGAINST ELANA HIRSCH A/K/A ELANA MICHELLE
HIRSCH A/K/A ELANA BARKATS, JSBARKATS PLLC
and SUNNY JOSEPH BARKATS A/K/A SANNY JOSEPH BARKATS**

As and for the counterclaims of Livewire Ergogenics, Inc. ("Livewire") against American E. Group LLC ("AEG" or "Counterclaim Defendant"), and its third-party claims against Elana Hirsch a/k/a Elana Michelle Hirsch a/k/a Elana Barkats ("Hirsch"), JSBarkats PLLC ("JSB") and Sunny Joseph Barkats a/k/a Sanny Joseph Barkats ("S. Barkats") (collectively with Hirsch and JSB, the "Third-Party Defendants"), Livewire respectfully alleges, upon knowledge as to its own conduct and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This case concerns the Counterclaim Defendant and Third-Party Defendants' exploitation of Livewire during a business transaction arranged by Livewire's attorneys, S. Barkats and his law firm, JSB (collectively, the "Barkats Parties"), who failed to disclose their own self-interest in order to take advantage of numerous conflicts of interest created for the Counterclaim Defendant's and Third-Party Defendants' personal gain, and to the detriment of Livewire.

2.      In November 2015, Livewire retained JSB, a New York law firm, to perform various services on Livewire's behalf.  S. Barkats, as JSB's partner primarily responsible for Livewire's representation, was entrusted to act as Livewire's fiduciary to help assist the company with financing deals.  In connection therewith, the Barkats Parties brought to Livewire a deal for short-term financing from AEG, the proposed terms of which were set forth in a promissory note dated November 17, 2015 (the "Note").

3.      Despite being retained to represent Livewire, the Barkats Parties acted in contravention of their fiduciary duties to Livewire by placing AEG's interests ahead of the interests

of Livewire in order to benefit themselves. The Barkats Parties made numerous misrepresentations and/or omitted material facts from Livewire in connection with the Note.

4.      Upon information and belief, the Barkats Parties also represented AEG in negotiating and structuring a deal that contained one-sided, unconscionable terms (for the benefit of AEG) that Livewire did not understand. Most notably, the Note charged Livewire an interest rate of approximately 350% (in clear violation of New York criminal usury laws), and, upon the Event of a Default, an accelerated "balloon" payment of ten (10) times the amount of principal and interest.

5.      In violation of their ethical obligations as Livewire's attorneys, the Barkats Parties acted in derogation of material conflicts of interest created by S. Barkat's serving, on the one hand, as Livewire's attorney in negotiating the Note, and, on the other hand, as a beneficiary under the Note. Upon information and belief, S. Barkats never disclosed to Livewire that he was a broker of AEG, held a membership interest in AEG, and was married to Hirsch, AEG's principal. Not only did the Barkats Parties fail to obtain effective written waivers of these conflicts, but they also charged fees and rendered advice to Livewire, with knowledge that Livewire would accept the terms of the Note in reliance upon the advice of its legal counsel.

6.      Livewire seeks declaratory and monetary relief based upon the Counterclaim Defendant and Third-Party Defendants' bad faith, breaches of fiduciary duties and violations of professional responsibilities. As a result of the Counterclaim Defendant's and Third-Party Defendants' deliberate (and concerted) efforts to deceive, manipulate and defraud Livewire in connection with the Note, Livewire has sustained damages as a proximate result thereof.

## THE PARTIES

7. Livewire is a Nevada business corporation with a principal place of business located at 1600 N. Kraemer Blvd., Anaheim, California 92806.

8. AEG is a New York limited liability company which maintains places of business at 18 E. 41st Street, 19th Floor, New York, New York 10017 and/or 1350 Avenue of the Americas, New York, New York 10019.

9. Hirsch is an individual and a resident of the State of New York. Upon information and belief, Hirsch is a principal and the majority member of AEG (owning approximately a 96% membership interest).

10. JSB is a New York professional limited liability company which maintains places of business at 18 E. 41st Street, New York, New York 10017 and/or 1350 Avenue of the Americas, 1210, New York, New York 10019.

11. S. Barkats is an individual and a resident of the State of New York. S. Barkats is a New York State licensed attorney and the founding partner of JSB. Upon information and belief, S. Barkats is also a licensed real estate broker and a member of AEG (owning approximately a 4% membership interest). Upon further information and belief, S. Barkats is the husband of AEG's principal, Hirsch.

12. JSB and S. Barkats were counsel to Livewire at all relevant times hereto.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     Venue in the Southern District of New York is proper pursuant to 28 U.S.C. §1391 because the Counterclaim Defendant and Third-Party Defendants are residents of this judicial district, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and/or the Counterclaim Defendant and Third-Party Defendants have sufficient contacts, ties to and relations with this judicial district such that they are subject to personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

### Livewire and the Nature of its Business

15.     Livewire is a publicly-traded Nevada corporation that was formed in 2007 in the business of creating and developing nutritional products, acquiring and licensing special purpose real estate properties, and the management of legal, fully-controlled and self-contained greenhouses on such properties.

16.     Livewire's stock is quoted on the "Over-the-Counter" ("OTC") market and trades under the symbol "LVVV".

### The Engagement Letter with JSB and Livewire's Retention of the Barkats Parties

17.     In or about mid-2015, Livewire was seeking funding to pay off its auditors, as well as its service providers.  Livewire was referred by one of its auditors to JSB, as attorneys, to represent Livewire in connection with ongoing reporting obligations with the Securities and Exchange Commission ("SEC") and general corporate governance, as well as assist with financing.

18.     On or about November 3, 2015, JSB prepared an engagement letter dated November 3, 2015 (the "Engagement Letter"), that memorialized the terms of Livewire's retention

of JSB as its legal counsel.  In connection therewith, S. Barkats sent the following email to Livewire's Chief Executive Officer, Bill Hodson ("Hodson") on or about November 4, 2015:

> *Bill, find attached our engagement letter allowing our firm to immediately take over the legal representation work associated with your work. And secure terms of a note for $50K. Will start negotiating fund disbursements. Please play along with my guidance and work.  Review and execute so we can start the work.*

19.     Pursuant to the Engagement Letter prepared by the Barkats Parties, JSB agreed to assist Livewire with financing.  According to the Engagement Letter, S. Barkats would be the partner primarily responsible for the legal representation of Livewire.

20.     The Engagement Letter also contained the following provision with respect to "***Financing***":

> *The firm will assist you with identifying sources of financing to pay service providers and make sure the Company is current with certain determined invoices, and will charge a $4,500 flat fee for securing such financing on your behalf and review the terms of the not, <u>any conflicts shall be properly be waived by You in the event the funds are procured though another entity the firm may represent or partially own</u>. The Firm will negotiate terms with vendors and such terms will not bound your Company but the financing which will be made to you in the aggregate of approximatively $50,000 in value.*

21.     Upon information and belief, the Barkats Parties never explained this provision in detail to Hodson or represent that a conflict of interest may exist with respect to AEG or another entity.

22.     Hodson, as CEO of Livewire, agreed and accepted the terms of the Engagement Letter with JSB on or about November 5, 2015.

**The Note Between Livewire and AEG**

23.     In early November, 2015, S. Barkats wrote to Hodson that he was in the process of "negotiating hard" to obtain funding for Livewire.  At the time, Livewire was hopeful to obtain at least $30,000 in order to pay the outstanding invoices of its service providers.

24.     On or about November 13, 2015, the Barkats Parties obtained, on Livewire's behalf, a short-term bridge loan with AEG in the amount of $30,000 (the "Loan").  On or about November 16, 2015, JSB delivered to Livewire a copy of the Note, which purported to set forth the terms of the Loan from AEG to Livewire.

25.     Pursuant to the terms of the Note,[4] Livewire would be required (i) to repay the principal amount of the Loan ($30,000) in full in six (6) months at an interest rate of twenty percent (20%) per annum; and, (ii) as "additional consideration" for the Loan, to issue AEG restricted shares of Livewire common stock equal to US$50,000 (which equaled approximately 250 million shares at the time of the transaction  (the "Restricted Shares")), upon the execution of the Note. The Restricted Shares were to be freely tradeable on May 17, 2016, the maturity date of the Note (the "Maturity Date").

26.     The Note also included a provision that if an Event of Default shall occur, then the Restricted Shares shall be freely transferable and the Note shall be immediately convertible to ten (10) times the liquidated value of the Indebtedness.  (*See* ECF No. 7, Ex. A, Section 4) (emphasis added)

27.     Further, the Note stated that, "[i]n no event shall any agreed to or actual interest charged, reserved or taken by [AEG] as consideration for this Note exceed twenty percent (20%). In the event that the interest provisions of his Note shall result at any time or for any reason in an

---

[4] Upon information and belief, the Note was drafted by (or with the assistance of) the Barkats Parties.

effective interest rate that exceeds twenty percent (20%), then without further agreement or notice the obligation to be fulfilled shall be automatically reduced to such limit…." (*See* ECF No. 7, Ex. A at Section 5).

28.     Upon reviewing the Note, Hodson immediately contacted S. Barkats to inform that he would not personally guaranty the Note, which was initially required from Hodson in order to effectuate the Loan.

29.     Additionally, Hodson requested from S. Barkats, his attorney, clarification regarding several of the proposed terms set forth in the Note.

30.     For example, on November 16th Hodson sent an email to S. Barkats stating, in relevant part:

> …look, I obviously don't plan on defaulting, but can you explain this sentence to me? *Moreover, if an Event of Default shall occur, then the Note shall be immediately convertible to ten (10) times the liquidated value of the Indebtedness.*[5] I think we can do it without the [personal guaranty], I just want to make sure I understand all the terms.

31.     S. Barkats never addressed Hodson's concerns or explained several of these terms contained in the Note.

32.     Because Livewire was in dire need of capital at the time, Hodson, in reliance upon the legal advice of the Barkats Parties, agreed to sign the Note on November 17, 2015 without a personal guaranty.

33.     Further, in reliance upon the legal advice of the Barkats Parties, Livewire executed the Note without being advised by the Barkats Parties that the Note included (i) a provision that charged a "criminally usurious" interest rate (under New York Penal Law §190.40) by including,

---

[5] Hodson was referring to "Section 4" of the Note, whereby, in the Event of Default, the Note shall be immediately convertible to ten (10) times the liquidated value of the Indebtedness.

as additional consideration for the Loan, the requirement that Livewire issue $50,000 worth of restricted stock to AEG; and (ii) an unconscionable provision that required Livewire to pay, in the Event of a Default, a "balloon" payment in an amount equal to ten (10) times the value of the Indebtedness.

34.     Upon information and belief, S. Barkats advised Hodson to accept the aforementioned provisions of the Note (notwithstanding the fact they were unfavorable to Livewire) due to the Barkats Parties' own undisclosed material conflicts of interests in achieving the most favorable terms of a deal for AEG and Hirsch.

35.     During the course of their representation of Livewire, the Barkats Parties failed to explain or disclose to Livewire specifically that the other party to the Note, AEG, was in fact S. Barkats' own company. Notwithstanding their ethical obligations as attorneys, S. Barkats never informed Livewire that he was a real estate broker with AEG, maintained a membership interest (of approximately 4%) in AEG, or that he was married to and shared a residence with Hirsch, AEG's principal member. Nor did the Barkats Parties ever obtain an effective written waiver of these conflicts from Livewire.

36.     Upon information and belief, the Barkats Parties were, in actuality, representing AEG and negotiating with Livewire on AEG's behalf without disclosure to Livewire.

37.     On November 17, 2015, Livewire received a wire transfer from AEG in the amount of only $7,400 of the Loan proceeds.

38.     Shortly thereafter, S. Barkats sent an email to Hodson stating, in relevant part:

> *We now need to circle back and strategize. What's the name of the game, also you need to file a press release about you engaging us and that we managed on a short notice to secure a debt capital.*

39.     On December 2, 2015, JSB, on behalf of Livewire, prepared a Form 8-K filing and press release to report, *inter alia,* (i) Livewire's execution of the Note with AEG (and the terms thereunder); and (ii) Livewire's retention of JSB. Upon information and belief, the December 2nd press release was prepared by JSB, in large part, to tout the Barkats Parties and their purported strong reputation on Wall Street.

40.     On or about December 16, 2015, AEG, without written authorization from Livewire, made a wire transfer payment in the amount of $14,500 to JSB. Notably, the December 16, 2015 wire transfer archive indicates identical addresses for AEG (f/k/a Sunny Sky Realty LLC) and JSB, with each located at 18 E. 41st St., New York, New York 10017.

**AEG Attempts to Convert Restricted Stock; The Barkats Parties Threaten Livewire**

41.     In January 2018, due to its financial condition at the time and the egregious demands from AEG, Livewire was unable to deliver the Restricted Shares or repay the Loan prior to the Maturity Date.

42.     While Livewire expressed its desire to work towards an amicable resolution concerning the Note, S. Barkats demanded that Livewire deliver the Restricted Shares to AEG and also pay the default provision under the Note (Section 4), either in cash or liquidated shares of Livewire stock (*i.e.,* freely tradeable shares until AEG can convert into cash).

43.     During Livewire's correspondence with the Barkats Parties, S. Barkats sent various emails and made telephone calls threatening Hodson to "make good" on Livewire's obligations, and, in doing so, falsely stated that the Note was entered into before the Barkats Parties became engaged as Livewire's legal counsel.

44.     On or about February 13, 2018, Livewire first became aware that the Barkats Parties and the holder of the Note, AEG (Hirsch) were related parties.

45. On or around February 15, 2018, AEG (Hirsch) elected to convert $20,000.00 of the $50,000.00 amount of principal and interest under the Note into 66,666,667 shares of Livewire common stock at a conversion price of .0003 per share.

46. Upon information and belief, the Counterclaim Defendant seeks to enforce unconscionable and unenforceable terms of the Note despite its own blatant misconduct in the negotiation and effectuation of the Note, specifically, their conscious and concerted efforts with the Third-Party Defendants to harm Livewire.

## COUNT I
### (Declaratory Judgment – the Note is Unenforceable)

47. Livewire repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48. As set forth above, the Note Section "1" of the Note sets forth, in relevant part, the following:

> …… as additional consideration for this Note, [Livewire] will give to [AEG] restricted shares of [Livewire] equal to US$50,000.00 (the "Restricted Shares") that will be convertible to freely tradeable shares on the Maturity Date…

49. Further, Section "4" of the Note sets forth, in relevant part, the following:

> An "Event of Default" shall be deemed to have occurred upon the occurrence of any of the following: (i) [Livewire] should fail for any reason or for no reason to make any payment of the principal or interest pursuant to this Note within thirty (30) days of the Maturity Date or otherwise due as prescribed herein . . .

> If an Event of Default shall occur and continue unremedied for more than sixty (60) days, then the Indebtedness, including all unpaid interest accrued thereon, shall at the option of [Plaintiff] and without notice to [LVVV], become due and payable at once and may be collected forthwith, whether or not there has been a prior demand for payment and regardless of the stipulated date for maturity.

> Moreover, if an Event for Default shall occur, then the Restricted Shares shall be freely tradeable and this Note shall be immediately convertible to ten (10) times the liquidated value of the Indebtedness…

50. An actual and justiciable controversy exists concerning whether the above provisions of the Note are unconscionable, illegal, void and unenforceable.

51. As stated herein, the above-referenced provisions of the Note were procured by the bad faith and/or fraudulent conduct of the Counterclaim Defendant and Third-Party Defendants.

52. Based upon the foregoing, Livewire seeks a declaratory judgment determining that the Note is invalid, void, unconscionable, illegal and unenforceable.

## COUNT II
### (Breach of Fiduciary Duty – the Barkats Parties)

53. Livewire repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54. As attorneys for Livewire pursuant to the Engagement Letter, the Barkats Parties owed fiduciary duties to Livewire, including a duty to exercise reasonable care in representing Livewire and a duty of loyalty to act in good faith and for the best interests of Livewire.

55. The Barkats Parties breached their fiduciary duties to Livewire, in bad faith and in order to financially benefit for themselves, to the detriment of Livewire. Specifically, the Barkats Parties failed to act in the best interests of Livewire by advising, persuading and/or pressuring Livewire to accept the one-sided, unconscionable terms of the Note with AEG. Further, the Barkats Parties blatantly disregarded their duty of loyalty by failing to disclose or explain to Livewire their inherent conflict of interest with respect to AEG, including that S. Barkats was a member of AEG, owned interest in AEG, and was married to Hirsch, AEG's principal.

56.     As a proximate result of the Barkats Parties' breaches, Livewire has suffered and continues to suffer actual damages in an amount to be determined at trial.

57.     As a result of the foregoing, the Barkats Parties are jointly and severally liable to Livewire in an amount to be determined at trial.

## COUNT III
### (Aiding and Abetting Breach of Fiduciary Duty – AEG/Hirsch)

58.     Livewire repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     At all relevant times, AEG and Hirsch knew the Barkats Parties' were counsel for Livewire in connection with the Note, and as such, knew of the Barkats Parties' fiduciary duties owed to Livewire.

60.     Upon information and belief, AEG and Hirsch knowingly participated with the Barkats Parties in breaching their fiduciary duties to Livewire by providing the Barkats Parties material assistance enabling the Barkats Parties to breach these fiduciary duties to Livewire.

61.     AEG and Hirsch's respective actions in aiding and abetting the Barkats Parties' breaches of his fiduciary duties of care and loyalty to Livewire directly and proximately caused Livewire damages in an amount to be determined at trial.

## COUNT IV
### (Breach of Implied Covenant of Good Faith and Fair Dealing – the Barkats Parties)

62.     Livewire repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     The Engagement Letter is a valid contract entered into by Livewire and JSB.

64. Among other things, the Engagement Letter between Livewire and JSB included an implied covenant of good faith and fair dealing, which required the parties to refrain from unreasonable conduct.

65. The Barkats Parties breached the implied covenant of good faith and fair dealing because they willfully intended to deceive and manipulate Livewire into entering the with AEG and obtain favorable terms to the detriment of Livewire.

66. The Barkats Parties are liable to Livewire for damages resulting from the Barkats Parties' breach of the implied covenant of good faith and fair dealing.

67. By virtue of the Barkats Parties' actions, Livewire has been damaged in an amount to be determined at trial.

## COUNT V
### (Breach of Implied Covenant of Good Faith and Fair Dealing – AEG/Hirsch)

68. Livewire repeats and re-alleges each and every allegation contained above as if fully set forth herein.

69. The Note is a valid contract entered into by Livewire and AEG.

70. Among other things, the Note between Livewire and AEG included an implied covenant of good faith and fair dealing, which required the parties to refrain from unreasonable conduct.

71. AEG breached the implied covenant of good faith and fair dealing because, in concert with the Barkats Parties, willfully intended to deceive and manipulate Livewire under the Note and obtain favorable terms to the detriment of Livewire.

72. AEG and Hirsch are liable to Livewire for damages resulting from AEG and Hirsch's breaches of the implied covenant of good faith and fair dealing.

73. By virtue of the Defendants' actions, Plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Livewire seeks judgment as follows:

A. On Count I, a declaratory judgment stating that the Note is void and has no binding effect on Livewire.;

B. On Count II, a judgment in favor of Livewire and against the Barkats Parties, jointly and severally, in an amount to be determined at trial;

C. On Count III, a judgment in favor of Livewire and against AEG and Hirsch, jointly and severally, in an amount to be determined at trial;

D. On Count IV, a judgment in favor of Livewire and against the Barkats Parties, jointly and severally, in an amount to be determined at trial;

E. On Count V, a judgment in favor of Livewire and against AEG and Hirsch, jointly and severally, in an amount to be determined at trial;

F. The costs and disbursements of this action, including reasonable attorneys' fees; and

G. Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
November 13, 2018

**GUSRAE KAPLAN NUSBAUM PLLC**

By: _/s/ Ryan J. Whalen_____
Ryan J. Whalen, Esq.
*Attorneys for Defendant and
Counterclaim Plaintiff/Third-Party
Plaintiff Livewire Ergogenics, Inc*
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400