UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/5/2019
```

-----------------------------------------------------------------X

AMERICAN E GROUP LLC,                    :
                                          :
                          Plaintiff,      :
                                          :
            -v-                           :          1:18-cv-3969-GHW
                                          :
LIVEWIRE ERGOGENICS INC.,                 :          MEMORANDUM OPINION
                          Defendant.      :                 AND ORDER

-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

Defendant Livewire Ergogenics Inc. borrowed $30,000 from Plaintiff American E Group LLC. That $30,000 loan, documented by a five-page promissory note, has metastasized into a six-party, now multi-year, federal action involving multiple claims and counterclaims. Plaintiff has requested leave to amend the complaint to add yet another party and still more claims. Because certain of the proposed amendments to the complaint are contradicted by the unambiguous language of the parties' promissory note, those aspects of the proposed amendment are denied as futile. The Court grants Plaintiff leave to amend the complaint in all other respects.

## I.      BACKGROUND

The Court assumes familiarity with its prior opinion (the "Prior Opinion") in connection with the first motion to dismiss brought by Defendant Livewire Ergogenics Inc. ("Livewire"). *See Am. E Grp. LLC v. Livewire Ergogenics Inc.*, No. 1:18-CV-3969-GHW, 2018 WL 5447541 (S.D.N.Y. Oct. 29, 2018). In the Court's Prior Opinion, the Court evaluated the language of the promissory note (the "Note"), dated as of November 17, 2015, executed by Livewire in favor of Plaintiff American E Group LLC. Am. Compl. (ECF No. 7) Ex. A.

The Court's analysis in the Prior Opinion focused on the following provision of the Note:

Moreover, as additional consideration for this Note, the Borrower will give to the Lender restricted shares of the Borrower equal to

> US$50,000.00 (the "Restricted Shares") that will be convertible to freely tradeable shares on the Maturity Date.  The Borrower will provide to the Lender, at the Borrower's expense, an opinion of counsel stating that, on the Maturity Date, the Restricted Shares are freely transferrable pursuant to SEC Rule 144A . . . .

*Id.* at 1.  The Court concluded that "the value of the Restricted Stock to be provided pursuant to the Note is unambiguous.  The Note states that, 'as additional consideration for this Note, [Defendant] will give to [Plaintiff] restricted shares of [Defendant] equal to $50,000 . . . that will be convertible to freely tradeable shares on the Maturity Date.'"  Prior Opinion, 2018 WL 5447541, at *5.

On December 7, 2018, Plaintiff filed a motion requesting leave to amend the complaint (the "Motion to Amend").  Dkt. No. 61.  The Motion to Amend proposed to amend the complaint to add another defendant, Bill Hodson, the CEO and majority shareholder of Livewire.  *See* Proposed Second Amended Complaint ("SAC"), Dkt. No. 62-1, at ¶¶ 5, 12, 26, 27, 60-66.  The SAC asserts a claim for tortious interference with contract against Mr. Hodson based on allegations that he caused Livewire to breach its obligations under the Note to deliver shares to Plaintiff so that he could maintain control over the company.  *Id.* at ¶ 27.  The issuance of additional shares, the proposed SAC alleges, would have significantly diluted Mr. Hodson's equity position in Livewire, and left Plaintiff as the company's largest shareholder.  *Id.*

The proposed SAC also recharacterizes the issuance of stock pursuant to the Note.  Plaintiff proposes to plead that the Note "was intended to include two separate transactions.  The first transaction was a loan . . . .  The second transaction was essentially a purchase by Plaintiff of $50,000 worth of . . . stock . . . the consideration for which was the making of the loan without a personal guarantee from Hodson . . . ."  SAC at ¶¶ 19-20.  On the basis of this characterization of the transaction described in the Note, Plaintiff proposes to add two additional causes of action against Livewire:  First, a claim for specific performance for the delivery of shares pursuant to the "sale" that Plaintiff claims is provided for in the Note.  *Id.* at ¶¶ 43-49.  And, second, a claim for money

damages as a result of Livewire's asserted failure to deliver the shares as part of their sale. *Id.* at ¶¶ 50-53.

The proposed SAC also adds a claim for unjust enrichment against Livewire. The Court understands that the claim is proposed to be pleaded in the alternative, in the event that the Court ultimately concludes that the Note is unenforceable. *Id.* at ¶¶ 67-71.

Livewire has opposed all of the proposed amendments (other than the addition of the unjust enrichment claim) on the basis that they are futile. Memorandum of Law in Opposition to Motion to Amend ("Opp."), Dkt. No. 65. Plaintiff's efforts to reconfigure the unambiguous terms of the Note are futile, so leave to amend the complaint to do so must be denied as futile.

## II.     STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within 21 days of serving it or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). After that point, absent written consent from the opposing party, leave to amend must be obtained from the district court. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) provides that courts "should freely give leave when justice so requires." "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87–88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79, and courts need not give "credence to plaintiff's conclusory allegations." *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (internal quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do . . . .").

The Note is governed by New York law. Note § 14. Under New York law, the "fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Id.* (internal

quotation marks and citation omitted).  "Thus, a written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms."  *Id.*; *see also South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (2005) ("In cases of contract interpretation, it is well settled that when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms." (internal quotation marks and citation omitted)).

"In a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous."  *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (quoting *Krumme v. West Point Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)).  The question of "[w]hether or not a writing is ambiguous is a question of law to be resolved by the courts."  *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) (citation omitted).  "It is well settled that a contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion."  *Lockheed Martin Corp.*, 639 F.3d at 69 (citations omitted).  "Conversely, . . . the language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."  *Id.* at 69.

"'Ambiguity is determined by looking within the four corners of the document, not to outside sources.'"  *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (quoting *Kass v. Kass*, 91 N.Y.2d 554, 566 (1998)).  "It is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.'"  *W.W.W. Assoc.*, 77 N.Y.2d at 163 (quoting *Intercontinental Planning v Daystrom, Inc.*, 24 N.Y.2d 372, 379 (1969)).  "An analysis that begins with consideration of extrinsic evidence of what the parties meant, instead of looking first to what they said and reaching extrinsic evidence only when required to do so because of some identified ambiguity, unnecessarily denigrates the contract and

unsettles the law." *Id.*  "[B]efore looking to evidence of what was in the parties' minds, a court must

give due weight to what was in their contract." *Id.* at 162.

"Parol evidence—evidence outside the four corners of the document—is admissible only if a

court finds an ambiguity in the contract.  As a general rule, extrinsic evidence is inadmissible to alter

or add a provision to a written agreement." *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436

(2013).  "Furthermore, where a contract contains a merger clause, a court is obliged 'to require full

application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary

or contradict the terms of the writing.'" *Id.* (quoting *Matter of Primex Int'l Corp. v. Wal-Mart Stores*, 89

N.Y.2d 594, 599 (1997)).

## III.   DISCUSSION

### a.   Because the Note is Unambiguous, Plaintiff's Proposed Amendments Related to its Terms are Futile

The Note unambiguously states that the issuance of Restricted Shares was in consideration

for the issuance of the Loan.  As a result, Plaintiff's proposal to amend the complaint to characterize

the Note as reflecting two separate transactions—a loan, and a separate purchase of shares—is

futile. The plain language of the Note dictates this conclusion.  As described above, the Note states:

"Moreover, *as additional consideration for this Note*, the Borrower will give to the Lender restricted

shares of the Borrower equal to US$50,000.00 . . . ."  Note at 1 (emphasis added).  The Note clearly

states that the stock is to be issued "as additional consideration for the Note."  The plain language

of the Note does not support a proposed amendment asserting that the Note "was intended to

include two separate transactions.  The first transaction was a loan . . . .  The second transaction was

essentially a purchase by Plaintiff of $50,000 worth of . . . stock . . . the consideration for which was

the making of the loan without a personal guarantee from Hodson . . . ."  SAC at ¶¶ 19-20.  The

unambiguous language of the Note makes it clear that there was one transaction, and that the stock was to be issued as consideration for the Note.

Because the text of the Note is clear, there is no reason to look beyond the text of the Note to parol evidence to construe its terms. That point is emphasized by the integration clause of the Note. Section 13 of the Note provides

> This Note (including any recitals hereto) sets forth the entire understanding of the parties with respect to the subject matter hereof, and shall not be modified or affected by any offer, proposal, statement or representation, oral or written, made by or for any party in connection with the negotiation of the terms hereof, and may be modified only by instruments signed in writing by all of the parties hereto . . .

Note § 13. This clause bars the introduction of extrinsic evidence to vary or contradict the unambiguous terms of the Note.

### b. The Proposed Tortious Interference Claims Against Hodson are Not Futile

The proposed tortious interference claim against Hodson is not futile because the proposed SAC adequately alleges that he stood to personally gain from his actions. Under New York law, in order to state a claim for tortious interference with contractual relations, a plaintiff must allege: "(1) 'the existence of a valid contract between the plaintiff and a third party'; (2) 'the defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)). Where, as here, a corporation's officer is charged with inducing a corporation's breach, additional elements must be pleaded. "'A corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer * * * (and did not commit) independent torts or predatory acts directed at another.'" *Murtha v. Yonkers Child Care Ass'n, Inc.*, 45 N.Y.2d 913, 915, (1978) (quoting *Buckley v. 112 Cent. Park S., Inc.*, 285 A.D. 331, 334

(App. Div. 1954)) (internal quotation marks omitted).  In order to hold such defendants personally liable, a plaintiff must establish "(1) that defendants' acts were taken outside the scope of their employment; or (2) that defendants personally profited from their acts."  *G.D. Searle & Co. v. Medicore Commc'ns, Inc.*, 843 F. Supp. 895, 911 (S.D.N.Y. 1994).

The proposed SAC adequately alleges that Hodson personally benefited from the alleged tortious conduct.  The conclusory allegations in the proposed SAC that Hobson "acted maliciously, in bad faith and acted in his own self-interest" do not carry the day.  SAC at ¶ 27.  However, the complaint also specifically pleads that Hodson personally owned a majority stake in Livewire, and that his personal interest in, and control over, the company would be diluted as a result of the issuance of stock pursuant to the Note.  *Id.*  These specific factual allegations adequately plead that Hodson personally benefited from his actions.

In permitting this proposed amendment, the Court is not taking a position regarding Defendant's argument that Plaintiff's tortious interference claim is defeated because the Note is usurious, and therefore void.  The Court anticipates further briefing regarding that issue.

## IV.    CONCLUSION

Plaintiff's request to amend the complaint to allege that the Note reflects that restricted stock was not to be issued as consideration for the Note, and the addition of the related Counts II and III, is DENIED as futile.  Plaintiff's request to amend the complaint in the other respects is GRANTED.

The Clerk of the Court is directed to terminate the motion pending at Dkt. No. 61.

Dated:  August 2, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge

8