UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN E GROUP LLC,<br><br>      Plaintiff,<br> -against-<br><br>LIVEWIRE ERGOGENICS, INC.,<br><br>      Defendant. | 1-18-cv-03969-GHW |
| LIVEWIRE ERGOGENICS, INC.,<br><br>      Counterclaim Plaintiff/<br>      Third-Party Plaintiff,<br> -against-<br><br>AMERICAN E GROUP LLC,<br><br>      Counterclaim Defendant,<br><br>ELANA HIRSCH A/K/A ELANA MICHELLE HIRSCH A/K/A ELANA BARKATS, JSBARKATS PLLC and SUNNY JOSEPH BARKATS A/K/A SANNY JOSEPH BARKATS,<br><br>      Third-Party Defendants. | |

**THIRD-PARTY PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO JS BARKATS PLLC AND SUNNY JOSEPH BARKATS MOTION TO COMPEL ARBITRATION**

<u>**ORAL ARGUMENT REQUESTED**</u>

             GUSRAE KAPLAN NUSBAUM PLLC
             Ryan J. Whalen, Esq.
             120 Wall Street, 25th Floor
             New York, NY 10005
             (212) 269-1400
             *Attorneys for Defendant, Counterclaim*
             *Plaintiff and Third Party Plaintiff*

Dated: August 6, 2019

Defendant, Counterclaim Plaintiff and Third-Party Plaintiff Livewire Ergogenics, Inc. ("Livewire" or "Defendant") respectfully submits this memorandum of law in opposition to JS Barkats PLLC ("JSB") and Sunnny Joseph Barkats ("Barkats") motion to compel arbitration of Livewire's third party claims, pursuant to section 4 of the Federal Arbitration Act (the "Motion").

### Relevant Facts

**Substantive Facts**

In or about late 2015, Livewire was seeking funding to pay off its auditors, and other service providers. Livewire was referred by one of its auditors to JSB, as attorneys, to represent Livewire in connection with ongoing reporting obligations with the Securities and Exchange Commission ("SEC") and general corporate governance, as well as assist with financing. (*See* Livewire's Amended Third Party Complaint ("TPC") D.E.107 at ¶ 16.

On or about November 3, 2015, JSB prepared an engagement letter dated November 3, 2015 (the "Engagement Letter[1]") that memorialized the terms of Livewire's retention of JSB as its legal counsel. Pertinent here is the arbitration provision contained in the Engagement Letter, which concerns attorney-client fee disputes:

> Any dispute, shall be resolved by confidential arbitration **as follows**: (1) If and to the extent that the **New York Fee Dispute Resolution Program** (Part 137 of 22 NYCRR) providing for the information and expeditious resolution of fee disputes between attorneys and clients is applicable. (2) If such **Fee Dispute Resolution Program** is not applicable[2] to any such dispute, controversy or claim, then the arbitration shall be conducted in New York City in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and any award issued in such arbitration shall be enforceable in any court with jurisdiction. A copy of the **New York Fee Dispute Resolution Program** is available upon request.

*See* Motion Ex. A, p. 4. (Emphasis added.)

---

[1] A true copy of the Engagement Letter is annexed hereto as Exhibit ("Ex.") A to the Motion. D.E. 140-1.
[2] 22 N.Y.C.R.R. 137.(b)(2) concerns fees disputes between $1,000 and $50,000.

1

In connection therewith, JSB brought to Livewire a deal for short-term financing from AEG (formerly known as Sunny Sky Realty). Prior to executing the Note, JSB and Barkats failed to disclose to Livewire several material facts, including, but not limited to:

i. Barkats was a member of AEG at the time the Note was executed.[3]

ii. Barkats wife, Elana Hirsch was the other member of AEG[4];

iii. JSB was representing AEG in connection with the Note negotiations (D.E. 107 at ¶ 84);

iv. JSB and AEG shared the same office space, which was leased by AEG. (*See id.* at 87 and

Livewire executed the Note on November 17, 2015 (the "Note").[5] Due to its financial condition at the time and the egregious demands from AEG, Livewire was unable to deliver the Restricted Shares or repay the Note prior to the Maturity Date.

Beginning in January 2018, Barkats -- now on behalf of AEG -- contacted Livewire and demanded delivery of the Restricted Shares to AEG or else Barkats would sell "our NOTE" to third parties. *See* Whalen Aff. at ¶ 5.

**Procedural Facts**

On December 6, 2018, Livewire filed its Answer to the Amended Complaint and Third Party Complaint (the "TPC") against JSB, Barkats and Elana Hirsch . D.E. 54. Services of the

---

[3] See the accompanying Affirmation of Ryan J. Whalen ("Whalen Aff.") at ¶ 4, which attaches a purported handwritten contract dated January 2, 2018 between AEG (f/k/a/ Sunny Sky Realty LLC) and Barkats in which he states, "I Sunny Barkats, member of Sunny Sky Realty LLC, hereby retroactively relinquish my percentage ownership in Sunny Sky Realy LLC as a minority owner."

[4] Admitted in AEG's Answer and Affirmative Defenses to Livewire's Counterclaims. (D.E. 97 at ¶ 10.)

[5] The facts concerning the terms of the Note are set forth in the Court's Orders of October 28, 2018 (D.E. 28) and August 2, 2019. (D.E. 152).

2

summons and TPC upon JSB occurred on January 25, 2019, which required JSB's answer to be filed on February 15, 2019. D.E. 73.

JSB did not file a response to the TPC on or before February 15, 2019. On February 19, 2019, Attorney Jerome Noll[6] contacted Livewire's counsel and requested that JSB receive an extension of time until March 11, 2019 to file its answer to the TPC. *See* the Whalen Aff. ¶ 6. Counsel for Livewire responded that the consent would be given if JSB waives all jurisdictional defenses. *See id.* In response, Attorney Noll agreed, writing: "JS Barkats, PLLC waives all jurisdictional defenses, including, but not limited to, improper or defective service of the summons and complaint on JS Barkats PLLC in the above referenced case." *See id.*

On March 8, 2019, Attorney Noll emailed Livewire's counsel and requested Livewire's consent to a second extension of time for JSB to file its answer to the TPC on account of a "bad case of the flu." *See* Whalen Aff. ¶ 8. Livewire's counsel agreed on condition that Attorney Noll file his notice of appearance on behalf of JSB.

On March 18, 2019, Attorney Noll informed Livewire's counsel that he was having problems logging onto his PACER account, and that his notice of appearance and JSB's response to the TPC would be filed as soon as the problem is resolved. Livewire's counsel consented, and Attorney Noll responded, "I appreciate your extension of time to respond through today and thank you again for your consideration." *See id.* ¶ 9.

On April 8, 2019, counsel for all parties, including Attorney Noll, participated in a telephone conference to discuss a proposed case management plan, which was to be filed with the Court by April 12, 2019. *See* Whalen Aff. ¶ 10 and D.E. 99. During the call, Livewire's counsel

---

[6] Despite the appearance of Attorney Paukman, JSB and Barkats are still represented by Jerome Noll, Esq. *See* DE 94-95.

3

inquired with Attorney Noll why his notice of appearance and JSB's response to the TPC had still not been filed; Attorney Noll responded that it would be filed by end of day on April 8, 2019. *See* Whalen Aff. ¶ 10.

On April 9, 2019, Attorney Noll finally filed his notice of appearance on behalf of JSB and Barkats' and filed their Answer to the TPC. *See* D.E. 101 and 102. JSB and Barkats received, approximately, a two month extension of time to file their Answers to the TPC pursuant to the agreement reached with Livewire on February 19, 2019.

On May 14, 2019, Livewire's counsel asked that Attorney Noll identify JSB's Fed.R.Civ.P. 30(b)(6) witness; Attorney Noll responded that Barkats would be JSB's 30(b)(6) witness and that he would be appearing for his deposition despite being out of the country. *See* Whalen Aff. ¶ 12. During the same email correspondence, Attorney Noll requested an update on the proposed confidentiality agreement between the parties. *See id.* Attorney Noll reviewed the confidentiality agreement and approved its submission to the Court. *See* D.E. 120 and 121. On June 5, 2019, Attorney Noll informed Livewire's counsel that he is continuing to work on getting a date for Barkats' deposition. *See id.* ¶ 13.

From February 19, 2019 through June 2019, Attorney Noll and Livewire's counsel engaged in numerous calls and email exchanges and at no point did counsel for JSB and Barkats raise the issue of moving to compel arbitration. *See* Whalen Aff. ¶ 14. It was not until a meet and confer on July 12, 2019, that Joseph Paukman Esq., JSB's newly appointed counsel, first raised the issue of compelling arbitration. *See* Whalen Aff. ¶ 15. At that time, Livewire's counsel informed Attorney Paukman that his co-counsel, Attorney Noll, previously waived JSB's right to move to dismiss on jurisdictional grounds and provided Attorney Paukman with a copy of Attorney Noll's written waiver. *See id.*

4

On July 14, 2019, JSB and Barkats filed its first Motion to Dismiss, which sought to compel arbitration and requested that this Court treat said motion as a "motion[] to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." (D.E. 133, p. 7). The Court denied the motion without prejudice. (D.E. 134). Later on July 14, 2019, JSB and Barkats filed a letter-motion to "request a pre-motion conference to concerning [sic] a motion pursuant to F.R.C.P. § 12(b)(1) to either dismiss the claims against or to compel arbitration…." D.E. 135, p. 1. In the letter-motion, counsel for JSB and Barkats acknowledged that in the Second Circuit, motions to compel arbitration are deemed motions to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. § 12(b)(1).

The Court granted JSB and Barkats leave to file their motion to dismiss at the pre-motion conference on July 16, 2019. (D.E. 142).

## Argument

**A.     Legal Standard**

In the Second Circuit motions to compel arbitration are considered motions to dismiss under Fed.R.Civ.P. 12(b)(1) because the motion is premised on the allegation that the Court does not have subject matter jurisdiction over the dispute due to the agreement to arbitrate. In *NYP Holdings, Inc. v. Newspaper and Mail Deliverers' Union of New York and Vicinity,* the Court determined that "the Union's assertion that arbitration is the proper forum for the Post's claims is considered a motion under 12(b)(1) that this Court lacks subject matter jurisdiction over the action."). *NYP Holdings,* 2002 WL 1603145 at * 1, n. 2 (SDNY 2002). *See Sutherland v. Ernsy & Young LLP*, 726 F.3d 290, 293 and 299 (2d Cir. 2013) (reversing the District Court's denial of a motion to dismiss under 12(b)(1) and compelling arbitration); *State of New York v. Oneida Indian Nation of New York,* 90 F.3d 58, 60 and 64 (2d Cir. 1996) (reversing District Court's ruling

that the State's claim was covered by mandatory arbitration clause and thus dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)); *Kutluca v. PQ New York Inc.*, 266 F.Supp.3d 691, 693 and 704 (SDNY July 2017) (granting, pursuant to Fed.R.Civ.P. 12(b)(1), "[d]efendants' motion to compel arbitration and dismiss the class action complaint...."); *Sands Bros. & Co. Ltd. v. Alba Perez Ttee Catalina Trust*, 2004 WL 2186574 at * 2-3 (SDNY Sept. 2004) (analyzing arbitrability in the context of a Fed.R.Civ.P. 12(b)(1) motion); *Orange County Choppers, Inc. v. Goen Tech. Corp.*, 374 F.Supp.2d 372, 373 and 375 (SDNY June 2005) (granting motion to compel arbitration under Fed.R.Civ.P. 12(b)(1)); and *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 381 (SDNY 2002) (analyzing motion to compel arbitration under the FAA as a motion pursuant to Fed.R.Civ.P. 12(b)(1)).

Rule 12(b)(1) provides for the dismissal of a claim when the federal court lacks jurisdiction over the subject matter. *See Cartagena Enter., Inc. v. J. Walter Thompson Co.*, 2013 WL 5664992 * 3 (S.D.N.Y. Oct. 16, 2013.) In considering a motion to dismiss for lack of subject matter jurisdiction, the court must assume the truth of the material facts alleged in the complaint. *See id.* However, "[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* On a motion to dismiss for lack of jurisdiction, this Court may consider other materials outside of the pleadings. *See Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 381 (S.D.N.Y. 2002).

**B.** **JSB Waived Its Right To Arbitrate**

On February 19, 2019, in consideration for receiving an uncommonly lengthy (approximately two month) extension of time to file a response to the TPC, JSB expressly waived all jurisdictional defenses against the TPC, which necessarily includes all subject matter jurisdiction defenses. Now, five months after receiving the benefit of Livewire's consideration,

JSB and Barkats[7] seek to back out of that agreement. The Court should not permit JSB to do so, particularly after it has received the benefit of the bargain and JSB has substantively participated in this litigation.

Arbitration agreements are contracts, on equal footing with other contracts so courts must enforce them according to their terms. *See Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 WL 2152703 * 10 (S.D.N.Y. May 6, 2015). While the Federal Arbitration Act was enacted to "replace judicial indisposition to arbitration…. [t]he purpose of the FAA was to make arbitration agreements as enforceable as other contracts, *but not more so.*" *Id.*

Parties to an arbitration agreement can waive their rights to arbitrate. *See In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113, 132 (2d Cir. 2011) (holding, "there is nothing irrevocable about an agreement to arbitrate." [and] "[b]oth of the parties may abandon this method of settling their differences, and under a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration. *See also Zhang v. Wang*, 317 F. App'x 26, 28 (2d Cir. 2008) (finding, "[l]ike contract rights generally, a right to arbitration may be modified, waived or abandoned.")

JSB and Barkats argue that their Answers to the TPC raised their purported right to compel arbitration, and therefore, did not waive their right to arbitrate. *See* D.E. 140, p 5. However, the fact that JSB asserted on April 9, 2019 an affirmative defense to compel arbitration does not effectively cure its previous waiver of its right to move to compel arbitration under Rule 12(b)(1). Months before filing its Answer to the TPC, JSB expressly and unequivocally waived all jurisdictional defenses, including any purported right to arbitrate, and in doing so received a lengthy extension to file a response to the TPC. After filings it Answer, JSB (via its counsel) then

---

[7] Barkats is not a party to the arbitration provision in the Engagement Letter, and therefore, lacks standing in his personal capacity to enforce the arbitration provision.

7

proceeded to participate in all aspects of this action without any indication that it would seek to compel arbitration. Livewire would suffer acute prejudice were JSB allowed to breach its agreement to waive its arbitration provision after having received the benefit of the bargain obtained by its waiver. "An unconditional waiver of a defense is valid and enforceable when entered into voluntarily." *See Export-Import Bank of U.S. v. Agricola Del Mar BCS*, 536 F.Supp.2d 345, 350 (S.D.N.Y. 2008). As such, the Motion should be denied in its entirety.

**C.  Livewire's Claims Against JSB Are Not Arbitrable**

In general, written agreements to arbitrate are governed by the FAA, which provides a liberal federal policy of favoring arbitration agreements. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). The question of whether the parties agreed to arbitrate is to be decided by the Court. *See John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 53, (2d Cir. 2001). The Court's first task must be to determine whether the parties agreed to arbitrate the dispute. *See St. Paul Fire & Marine Ins. Co. v. Employers Reinsurance Corp.*, 919 F.Supp. 133, 134 (S.D.N.Y. 1996). The Court is to resolve any doubts in favor of arbitration. *See id.* The Court applies a summary judgment standard to determine arbitrability. *See Bensadoun v. Jobe– Riat,* 316 F.3d 171, 175 (2d Cir.2003). If an issue of fact as to the making of the agreement for arbitration exists, a trial must be held to determine whether the claim is arbitrable. *See id.*

Here, the Engagement Agreement does not contain the typical broad arbitration provision that concerns any dispute 'arising out of this agreement'; rather the arbitration provision repeatedly references attorney-client fee disputes, and whether "such dispute" would fall within or without the $1,000 to $50,000 monetary threshold of 22 N.Y.C.R.R. 137(b)(2).[8] Here, pursuant to the

---

[8] At the very least, the Engagement Letter is ambiguous as to whether or not its concerns disputes outside of a fee dispute, which would require a trial to determine what the parties' intent when executing the Engagement Letter. *See Judd Burstein, P.C. v. Long*, 180 F.Supp.3d 308, 312 (S.D.N.Y. 2016) (holding, "where a contract is ambiguous, New York follows the well-established *contra proferentem* principle which requires that equivocal contract

8

clear language of the arbitration provision, if the dispute concerns fees below $50,000 then the dispute would be resolved pursuant to the New York Fee Dispute Resolution Program and if the dollar amount exceeds $50,000, then the dispute would be heard before the American Arbitration Association.

Livewire's TPC, however, does not assert third party claims against JSB in connection with a fee dispute, but rather claims for fraud, breaches of fiduciary duty, legal malpractice and civil conspiracy arising from JSB's intentional failure to disclose its deep and undisclosed affiliations with AEG. *See* D.E. 107. Thus, the arbitration provision in the Engagement Letter has no application to the manner of third party claims brought against JSB. JSB's Motion should be denied.

## Conclusion

For all the foregoing reasons, Livewire respectfully requests that the Court deny the Motion in its entirety, and award Livewire such other and further relief as this Court deems just and proper. Alternatively, Livewire respectfully requests that the Court schedule a trial to determine arbitrability.

Dated: New York, New York
       August 6, 2019

                                      Respectfully submitted,

                                      **GUSRAE KAPLAN NUSBAUM PLLC**

                                      By:   /s Ryan J. Whalen
                                               Ryan J. Whalen, Esq.
                                               *Attorneys for Defendant*, *Counter-Plaintiff and Third-Party Plaintiff Livewire Ergogenics Inc.*

---

provisions are generally construed against the drafter.") This inference against the drafter is even stronger when an attorney drafts an ambiguous retainer agreement. *See Albunio v. City of New York*, 23 N.Y.3d 65, 72-73 (2014).

120 Wall Street
New York, New York 10005
(212) 269-1400
Email:  rwhalen@gusraekaplan.com