USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/13/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
  :
AMERICAN E GROUP LLC, :
  :
                Plaintiff, :
  :
    -against- : 1:18-cv-3969-GHW
  :
LIVEWIRE ERGOGENICS INC., : MEMORANDUM OPINION AND
  : ORDER
                Defendant. :
  :
---------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

    Third-Party Plaintiff Livewire Ergogenics Inc. executed an engagement letter (the "Engagement Letter) for Third-Party Defendant JS Barkats PLLC ("JSB") (and together with Third-Party Defendant Sunny Joseph Barkats, the "Barkats Defendants") to represent it as legal counsel. The Engagement Letter contained a provision compelling arbitration of "any dispute." In the early stages of this case, counsel for JSB agreed to waive all "jurisdictional defenses" in exchange for an extension of time to file an answer to Livewire's third-party claims. The Barkats Defendants now move to compel arbitration of the third-party claims against them. Because the Engagement Letter contains an arbitration provision that subjects this dispute to arbitration and JSB's agreement to waive "jurisdictional defenses" does not override the parties' agreement to arbitrate in the Engagement Letter, the Barkats Defendants' motion to compel is GRANTED.

## I. BACKGROUND[1]

### A. Facts[2]

On November 3, 2015, Livewire entered into an agreement with JSB for JSB to represent Livewire as legal counsel. TPC ¶ 17. The relationship between JSB and Livewire was memorialized in an engagement letter. *See* Engagement Letter, Dkt No. 140-1. The Engagement Letter states that Livewire is retaining JSB in connection with its reporting obligations under the Securities Exchange Act of 1934, "general corporate governance[,]" and assistance with financing. *Id.* at 1.[3] The Engagement Letter contains an arbitration provision concerning disputes between JSB and Livewire. This provision states:

> Any dispute, shall be resolved by confidential arbitration as follows: (1) If and to the extent that the New York Fee Dispute Resolution Program (Part 137 of 22 NYCRR) providing for the information and expeditious resolution of fee disputes between attorneys and clients is applicable. (2) If such Fee Dispute Resolution Program is not applicable to any such dispute, controversy or claim, then the arbitration shall be conducted in New York City in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and any award issued in such arbitration shall be enforceable in any court with jurisdiction. A copy of the New York Fee Dispute Resolution Program is available upon request.

*Id.* at 4.

Soon after JSB and Livewire executed the Engagement Letter, Livewire executed a note (the "Note") with Plaintiff American E Group LLC (AEG) that has been the subject of extensive litigation in this action. TPC ¶ 24. AEG sued Livewire to enforce the Note. Dkt No. 1. Livewire, in turn, filed counterclaims against AEG and a third-party action against the Barkats Defendants, who had represented them in in connection with the negotiation and execution of the Note. Dkt

---

[1] The Court has previously issued two opinions in this case that provide further background. *See Am. E Group LLC v. Livewire Ergogenics Inc.*, 1:18-CV-3969-GHW, 2018 WL 5447541 (S.D.N.Y. Oct. 29, 2018); *Am. E Group LLC v. Livewire Ergogenics Inc.*, 1:18-CV-3969-GHW, 2019 WL 3553293 (S.D.N.Y. Aug. 5, 2019).
[2] Except as otherwise noted, the following facts are drawn from the exhibits to the Affirmation of Ryan J. Whalen in Opposition to Motion to Compel ("Whalen Aff."), Dkt No. 154, and are undisputed. Some background facts are drawn from the third-party claim and counterclaim portion of Livewire's Answer to Amended Complaint with Third-Party Claims and Counterclaims ("TPC"), Dkt No. 107.
[3] Citations to ECF documents in this opinion refer to the ECF pagination.

No. 54. The third-party complaint was served on the Barkats Defendants on January 25, 2019. Dkt No. 73.

As a result, on February 19, 2019, Jerome Noll—acting as counsel for JSB—emailed counsel for Livewire Ryan Whalen to request "an extension of time through March 11, 2019 to respond to the Counterclaim and Third-Party Complaint[.]" February 19, 2019 Emails, Ex. C to Whalen Aff., Dkt No. 154-3, at 3. On the same day, Whalen responded that "Livewire will consent to this request on the condition that JS Barkats, PLLC waives all jurisdictional defenses, including, but not limited [to], improper or defective service of the summons and complaint on JS Barkats PLLC." *Id.* at 2. Noll then responded, again on February 19, 2019, that "JS Barkats, PLLC waives all jurisdictional defenses, including, but not limited to, improper or defective service of the summons and complaint on JS Barkats, PLLC[.]" *Id.*

**B. Procedural History**

Livewire filed an amended answer with counterclaims and third-party claims on April 10, 2019. TPC, Dkt No. 107. As against the Barkats Defendants, the TPC raises claims for constructive fraud, *id.* ¶¶ 68-72, breach of fiduciary duty, *id.* ¶¶ 73-79, breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 94-99, legal malpractice, *id.* ¶¶ 108-115, and civil conspiracy, *id.* ¶¶ 116-127. On July 17, 2019, the Barkats Defendants filed a motion to compel arbitration under section 4 of the Federal Arbitration Act ("FAA"). Motion to Compel Arbitration ("Mot."), Dkt No. 140. On August 6, 2019, Livewire filed a memorandum of law in opposition to the motion to compel arbitration and an affirmation of Ryan J. Whalen in support of its opposition. Dkt Nos. 153-54; Whalen Aff., Dkt No. 154.

In its opposition, Livewire makes three arguments. First, it argues that Livewire's claims against the Barkats Defendants are not arbitrable under the terms of the Engagement Letter. Memorandum of Law in Opposition to Motion To Compel Arbitration ("Opp.") at 9 (capitalization

3

altered). Second, it argues that the Barkats Defendants waived their right to arbitrate by agreeing to waive its jurisdictional defenses. Opp. at 7. Third, Livewire seems to argue that waiver should be inferred because it would suffer prejudice if the Barkats Defendants are allowed to compel arbitration. Opp. at 8-9. The Barkats Defendants filed their reply on August 13, 2019. Reply Memorandum of Law in Support of Motion to Compel Arbitration ("Rep."), Dkt No. 159.

## II. LEGAL STANDARD

Under Section 2 of the FAA, as a general matter, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also provides that parties can petition the district court for an order compelling arbitration under 9 U.S.C. § 4. Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . . .

9 U.S.C. § 4. A party has "refused to arbitrate" within the meaning of Section 4 if it "commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citation and brackets omitted); *see also Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (finding no refusal to arbitrate where respondents had not commenced litigation nor failed to comply with an order to arbitrate).

"The role of federal courts, in ruling on a petition to compel arbitration under the FAA, is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected, or refused to arbitrate.'" *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 566-67 (S.D.N.Y. 2013) (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (quotation omitted)). "It has long been settled that

4

arbitration is a matter of contract and that, therefore, a party cannot be compelled to arbitrate issues that a party has not agreed to arbitrate." *Isaacs*, 968 F. Supp. 2d at 567. If the Court determines "that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015) (quoting *Nunez v. Citibank, N.A.,* No. 08-cv-5398 -BSJ, 2009 WL 256107, *2 (S.D.N.Y. Feb. 3, 2009)).

"The Supreme Court has interpreted the FAA broadly, finding a 'liberal federal policy favoring arbitration agreements.'" *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 533 (E.D.N.Y. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (brackets omitted). "The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "This principle flows inexorably from the fact that arbitration is simply a matter of contract between the parties." *Id.* (quotation and brackets omitted); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (holding that "arbitration is a matter of contract") (quotation omitted); *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (holding that, with respect to an arbitration agreement, "as with any other contract, the parties' intentions control"). Hence, "[t]he threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia*, 834 F.3d at 229 (citation omitted). However, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

In resolving a motion to compel arbitration under Section 4 of the FAA, "courts apply a

5

standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229 (quotation omitted). That standard "requires a court to consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Id.* (quotation and ellipsis omitted). Thus, "it is proper (and in fact necessary) to consider . . . extrinsic evidence when faced with a motion to compel arbitration," *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 CIV. 839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001)), and "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *accord Nicosia*, 834 F.3d at 229 ("If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.") (quotation omitted). "But where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Nicosia*, 834 F.3d at 229 (quotations omitted). In deciding a motion to compel, "the court must draw all reasonable inferences in favor of the non-moving party." *Id.* (citation omitted).

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *see also Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense.") (quotation marks omitted). Courts in this Circuit engage in the following inquiry:

6

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)).

## III. DISCUSSION

### A. Arbitration Under the Engagement Letter

By its terms, the Engagement Letter compels arbitration of the present dispute between Livewire and the Barkats Defendants. The Engagement Letter does not contain a choice-of-law provision, and the parties did not brief what state's law should govern the Court's analysis of its provisions. However, both parties cite to New York law in the briefing on this motion. If "the parties' briefs assume that New York substantive law governs the issues . . . such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).

Under New York law, the initial interpretation of a contract by the court includes "the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998) (quotations omitted); *accord, e.g., W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("Whether or not a writing is ambiguous is a question of law to be resolved by the courts."). Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993); *see also Breed v. Insurance Co. of North Am.*, 46 N.Y.2d 351, 355 (1978) (noting that no ambiguity exists when contract language has

7

"a definite and precise meaning" about which "there is no reasonable basis for a difference of opinion"). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt, Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989).

A court applying New York law "may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case." *Bank of New York Mellon v. WMC Mortg., LLC*, 12CV7096 DLC, 2015 WL 2449313, at *2 (S.D.N.Y. May 22, 2015) (quoting *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992)). Rather, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009) (quotation omitted).

The arbitration provision of the contract is unambiguous, and it requires the arbitration of this dispute. The first sentence of the arbitration provision in the Engagement Letter states that "*[a]ny* dispute, shall be resolved by confidential arbitration[.]" Engagement Letter at 4 (emphasis added). This dispute surely qualifies as "any dispute." Thus, by its plain terms, the arbitration provision requires arbitration of this dispute.[4]

Livewire's argument that the arbitration provision applies only to attorney-client fee disputes founders on the plain language of the Engagement Letter. Subsection one of the arbitration provision states that "*[i]f and to the extent* that New York Fee Dispute Resolution Program (Part 137 of NYCRR) providing for the informal and expeditious resolution of fee disputes between attorneys and clients is applicable, then the rules and procedures of such Fee Dispute Resolution Program

---

[4] Although Mr. Barkats is not a party to the Engagement Letter, Livewire has not argued that the Court might grant the motion to compel arbitration only as to JSB and allow third-party claims to proceed against Mr. Barkats individually. Moreover, it would frustrate the purpose of the arbitration provision to allow Livewire to litigate claims that would otherwise be subject to arbitration by framing those claims as being against Mr. Barkats in his individual capacity. For those reasons, the Court construes the arbitration provision as applying to the third-party claims against both JSB and Mr. Barkats.

8

shall apply." Engagement Letter at 4 (emphasis added).  Subsection two states that "[i]f such Fee Dispute Resolution Program is not applicable to *any* such dispute, controversy, or claim, then the arbitration shall be conducted in New York City in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and any award issued in such arbitration shall be enforceable in any court with jurisdiction." *Id.* (emphasis added).

The meaning of these provisions is clear.  All disputes are subject to arbitration.  The New York Fee Dispute Resolution Program supplies the rules for arbitration of a subset of attorney-client fee disputes, but that does not alter the underlying rule that all disputes are subject to arbitration.[5]  Accordingly, this dispute is subject to arbitration.[6]

**B. Waiver of Right to Arbitrate**

**1. Waiver of "Jurisdictional Defenses"**

The Barkats Defendants did not waive their right to move to compel arbitration when their counsel agreed to waive their jurisdictional defenses.  As an initial matter, the Barkats Defendants do not dispute that Jerome Noll's February 19, 2019 email constituted a valid waiver of jurisdictional defenses.  Hence, the Court assumes, without deciding, that Mr. Noll's waiver of jurisdictional defenses was valid and effective.  It is also true, as Livewire argues, that "[p]arties to an arbitration agreement can waive their rights to arbitrate." Opp. at 8 (citing *In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113, 132 (2d Cir. 2011); *Zhang v. Wang*, 317 F. App'x 26, 28 (2d Cir. 2008)).  However, the Barkats Defendants argue that a motion to compel arbitration is not a "jurisdictional defense" and thus is not precluded by its waiver of jurisdictional defenses.

---

[5] Only fee disputes between $1,000 to $50,000 are subject to the procedures outlined in 22 N.Y.C.R.R. 137(b)(2).
[6] Although Livewire raises a fraud claim, it does not argue that fraud invalidates the Engagement Letter; to the contrary, Livewire alleges in its TPC that "[t]he Engagement Letter is a valid contract entered into by Livewire and JSB." TPC ¶ 95.  Therefore, the fraud claim is properly subject to arbitration.  Livewire's breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, legal malpractice, and civil conspiracy claims flow either from the execution of the Note or the Engagement Letter itself.  Because JSB and Mr. Barkats advised Livewire to execute the Note in their role as legal counsel for Livewire—which is governed by the Engagement Letter—those claims are also subject to arbitration.

9

The linchpin of Livewire's argument that the Barkats Defendants waived their right to compel arbitration is that "[i]n the Second Circuit motions to compel arbitration are considered motions to dismiss under Fed. R. Civ. P. 12(b)(1) because the motion is premised on the allegation that the Court does not have subject matter jurisdiction over the dispute due to the agreement to arbitrate." Opp. at 6. Therefore, according to Livewire, when the Barkats Defendants waived "all jurisdictional defenses against the TPC," this "necessarily include[d] all subject matter jurisdiction defenses." *Id.* at 7.

The Court is not persuaded that the Barkats Defendants' agreement to waive "jurisdictional" defenses included a waiver of their right to bring a motion to compel arbitration. "The FAA does not independently confer subject-matter jurisdiction on the federal courts[.]" *Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135*, 707 F.3d 140, 142 n.4 (2d Cir. 2013) (citation omitted). Rather, an agreement to arbitrate is a type of forum-selection clause. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985) (analyzing arbitration agreement as a forum selection clause); *see also Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) ("[A]n agreement to arbitrate does not affect a district court's subject-matter jurisdiction. An arbitration clause is a type of forum-selection clause."). Because enforcement of a forum selection clause is not jurisdictional, enforcement of a provision compelling arbitration does not implicate the Court's subject matter jurisdiction. *See Automobile Mech. Loc. 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 743 (7th Cir. 2007) ("Enforcement of a forum selection clause (including an arbitration clause) is not jurisdictional[.]"); *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 880-81 (8th Cir. 2017) (holding that "an arbitration agreement alone" does not "divest[] the federal courts of subject matter jurisdiction"); *cf. Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004) ("Our prior decisions support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can

10

be granted.").[7] As a motion to compel arbitration is not an attack on the subject matter jurisdiction of the Court, the Barkats Defendants' agreement to waive jurisdictional defenses did not override their right to compel arbitration under the Engagement Letter in this case.

### 2. Waiver by Participation

The Barkats Defendants did not implicitly waive their right to move to compel arbitration by participating in this action. The Second Circuit has "emphasized that there is a strong presumption in favor of arbitration and that waiver of the right to arbitration is not to be lightly inferred." *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) (quotation and citation omitted). "Waiver will be inferred when a party engages in protracted litigation that results in prejudice to the opposing party." *Id.*

The parties have not engaged in "protracted litigation" regarding the third-party claims against the Barkats Defendants. Indeed, as the Barkats Defendants note, "almost no activity has occurred relating to the dispute between Livewire and the Barkats Defendants" between when the Barkats Defendants filed their answer to the TPC—which expressly reserved the Barkats Defendants' right to move to compel arbitration—and their motion to compel arbitration. Rep at 4. In addition, the Barkats Defendants have not made a motion related to the merits of their claim in that same period. Therefore, Livewire has not demonstrated that it will suffer the prejudice contemplated by *Slone* if the motion to compel arbitration is granted. Accordingly, the Court will not infer that the Barkats Defendants waived their right to compel arbitration under the

---

[7] The Court acknowledges that some courts in this district and elsewhere have held that motions to compel arbitration are properly brought under Rule 12(b)(1), which permits a court to dismiss a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *see NYP Holdings, Inc. v. Newsp. and Mail Deliverers' Union of New York and Vicinity*, 01 CIV. 4451 (SAS), 2002 WL 1603145, at *1 n.2 (S.D.N.Y. July 18, 2002) ("The Union's assertion that arbitration is the proper forum for the Post's claims is considered a motion under Rule 12(b)(1) that this Court lacks subject matter jurisdiction over the action.") (citing *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 381 (S.D.N.Y. 2002)); *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014) ("[A] district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration."). However, none of these decisions considered the argument that because the FAA does not confer jurisdiction, a motion to compel is not proper under Rule 12(b)(1). Accordingly, the Court does not find these decisions persuasive.

Engagement Letter.

## IV. CONCLUSION

For the foregoing reasons, the Barkats Defendants' motion to compel arbitration is GRANTED. The Court has determined that it should dismiss the third-party claims against the Barkats Defendants. "[W]hen all the claims in an action have been referred to arbitration *and a stay [is] requested*" the "text, structure, and underlying policy of the FAA mandate a stay of proceedings." *Katz v. Cellco P'ship*, 794 F.3d 341, 343, 347 (2d Cir. 2015) (emphasis added). However, no party has requested a stay if the Court compels arbitration of the third-party claims the Barkats Defendants. Therefore, the Court need not stay the case and may instead dismiss the third-party claims against the Barkats Defendants.

The Court has considered the Second Circuit's instruction that "[d]istrict courts should continue to be mindful of this liberal federal policy favoring arbitration agreements, when deciding whether to dismiss an action or instead to grant a stay." *Salim Oleochemicals v. M/V SHROPSHIRE*, 278 F.3d 90, 93 (2d Cir. 2002). As the Circuit has explained, "a dismissal renders an order appealable under [9 U.S.C.] § 16(a)(3), while the granting of a stay is an unappealable interlocutory order under [9 U.S.C.] § 16(b)[.]" Because "[u]nnecessary delay of the arbitral process through appellate review is disfavored[,]" often a stay—rather than dismissal—will be the proper outcome.

In this case, however the Court finds that the interests of judicial economy weigh in favor of dismissing the third-party claims outright. This litigation has been protracted and complex and continues to include claims, counterclaims, and third-party claims against Ms. Hirsch. The dismissal

of the third-party claims against JSB and Mr. Barkats may streamline these proceedings considerably.

Accordingly, the Court dismisses the third-party claims against JSB and Mr. Barkats.

    SO ORDERED.

Dated: January 13, 2020
    New York, New York

_____
GREGORY H. WOODS
United States District Judge