USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/14/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
: 
AMERICAN E GROUP LLC, :
:
                          Plaintiff, :
:
                 -against- :   1:18-cv-3969-GHW
:
LIVEWIRE ERGOGENICS INC., :   MEMORANDUM OPINION AND
:   ORDER
                         Defendant. :
:
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

       Third-Party Plaintiff Livewire Ergogenics Inc. executed a note (the "Note") with Third-Party Defendant American E Group LLC ("AEG") on the advice of its counsel, Third-Party Defendant JS Barkats PLLC ("JSB"), and Third-Party Defendant Sunny Joseph Barkats (together with JSB, the "Barkats Defendants"). Livewire alleges that the terms of the Note were unfair and that the Barkats Defendants recommended that it accept the terms of the Note only because it had undisclosed conflicts of interest with AEG. Livewire pleads that these conflicts led the Barkats Defendants to breach their fiduciary duties as attorneys to Livewire. Livewire alleges that Third-Party Defendant Elana Hirsch—Barkats' wife and AEG's principal member—assisted the Barkats Defendants by concealing these conflicts. Hirsch now moves to dismiss the third-party claims against her. Because Livewire has plausibly alleged that the Barkats Defendants breached their fiduciary duties to Livewire and that Hirsch helped them do so by concealing the conflicts between the Barkats Defendants and AEG, Hirsch's motion to dismiss is DENIED.

## I. BACKGROUND[1]

### A. Facts[2]

On November 3, 2015, Livewire entered into an agreement with JSB for JSB to represent Livewire as legal counsel. TPC ¶ 17. Barkats is "the managing partner of JSB." *Id.* ¶ 10. The agreement between JSB and Livewire was "memorialized" in an engagement letter (the "Engagement Letter"). *Id.* ¶ 17. In the Engagement Letter, the Barkats Defendants "agreed to assist Livewire with financing." *Id.* "The Engagement Letter also contained the following provision with respect to 'Financing:'

> [t]he firm will assist you with identifying sources of financing to pay service providers and make sure the Company is current with certain determined invoices, and will charge a $4,500 flat fee for securing such financing on your behalf and review the terms of the not [sic], any conflicts shall be properly be waived by You in the event the funds are procured though another entity the firm may represent or partially own. The Firm will negotiate terms with vendors and such terms will not bound [sic] your Company but the financing which will be made to you in the aggregate of approximatively $50,000 in value.

*Id.* ¶ 19. Soon after JSB and Livewire executed the Engagement Letter, Livewire executed the Note with AEG. *Id.* ¶ 24. Livewire alleges that the terms of the Note were unfavorable to Livewire. *Id.* ¶ 45.

The TPC alleges that the Barkats Defendants committed various torts against Livewire when they negotiated the terms of the Note. Livewire alleges that these torts resulted from conflicts of interest that the Barkats Defendants were subject to in negotiating the terms of the Note. Livewire alleges that the Barkats Defendants "represented Livewire in securing the Note, while

---

[1] The Court has previously issued three opinions in this case that provide further background. *See Am. E Group LLC v. Livewire Ergogenics Inc.*, 1:18-CV-3969-GHW, 2018 WL 5447541 (S.D.N.Y. Oct. 29, 2018); *Am. E Group LLC v. Livewire Ergogenics Inc.*, 1:18-CV-3969-GHW, 2019 WL 3553293 (S.D.N.Y. Aug. 5, 2019); Dkt No. 223.
[2] The facts are drawn from the counterclaim and third-party complaint portion of Livewire's answer to the amended complaint with third-party claims and counterclaims ("TPC"), Dkt No. 107, and are accepted as true for the purposes of this motion to dismiss. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

simultaneously owning and/or representing AEG." *Id.* ¶ 33. The TPC also alleges that Livewire was never informed that the "funds procured via the Note were from an entity (AEG) that JSB represented[.]" *Id.* ¶ 20. Livewire alleges that these conflicts led the Barkats Defendants to recommend that it accept the terms of the Note, notwithstanding the fact that these terms were unfavorable to Livewire. *Id.* ¶ 45. Livewire alleges that as a result of these conflicts, the Barkats Defendants breached their fiduciary duties as attorneys to Livewire, *id.* ¶¶ 73-79, and committed legal malpractice, *id.* ¶¶ 108-115.

Livewire alleges that Hirsch assisted the Barkats Defendants in committing these torts by concealing their conflicts of interest. The TPC alleges that Defendant Hirsch is married to and shares a residence with Barkats. *Id.* ¶ 47. Livewire also alleges that Hirsch is AEG's "principal member." *Id.* Livewire further alleges that it was never informed that Barkats and Hirsch "were AEG's only members." *Id.* ¶ 20. The TPC alleges that Hirsch actively concealed these conflicts by causing "the Note to identify AEG's offices located at 300 East 93rd Street, New York, New York 10128, when, in fact, AEG and JSB shared offices at 18 E. 41st Street, 19th Floor, New York, New York 10017." *Id.* ¶ 87. Livewire alleges that Hirsch did this to "deceiv[e] Livewire" by concealing "the fact that AEG (and its principal) had deep business and personal relationships with JSB and Mr. Barkats." *Id.* ¶ 86.

**B. Procedural History**

AEG initiated this lawsuit to enforce the terms of the Note on May 3, 2018, Dkt No. 1, and filed an amended complaint on May 10, 2018, Dkt No. 7. Livewire filed the TPC on April 10, 2019. Dkt No. 107. As against Hirsch, the TPC asserts claims for aiding and abetting a breach of the fiduciary duty owed to Livewire by the Barkats Defendants, TPC ¶¶ 80-93, and for civil conspiracy, *id.* ¶¶ 116-27. Hirsch filed the instant motion to dismiss on April 9, 2019. Dkt Nos. 104-05.[3]

---

[3] Although the motion to dismiss was filed one day before Livewire filed the TPC, Hirsch did not seek to file a renewed

3

Livewire filed its opposition on April 24, 2019. Dkt Nos. 114-15. Hirsch filed her reply on May 1, 2019. Dkt No. 116.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. *See Palin v. N.Y. Times Co.*, 933 F.3d 160, 165 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017); *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544). Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible

---

motion to dismiss and in her reply memorandum of law, Hirsch responds to arguments made in the TPC. *See* Reply Memorandum of Law in Support of Motion to Dismiss Third Party Claims ("Rep."), Dkt No. 116, at 5. Consequently, the Court has construed the instant motion as a motion to dismiss the TPC.

4

claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

### A. Choice of Law

New York law governs the claims at issue in this case. The parties do not dispute that New York law governs the claims, and both parties cite to New York law in the briefing on this motion. *See, e.g.*, Memorandum of Law in Support of Motion to Dismiss Third Party Claims, Dkt No. 105, at 6-13; Opposition to Motion to Dismiss Third Party Claims, Dkt No. 114, at 7-8. If "the parties' briefs assume that New York substantive law governs the issues . . . such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).

### B. Aiding and Abetting a Breach of Fiduciary Duty Claim

Hirsch moves to dismiss Livewire's claim for aiding and abetting a breach of fiduciary duty. "To state a claim for aiding and abetting breach of fiduciary duty under New York law, a plaintiff must show breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004) (quotation omitted).

#### 1. Breach of Fiduciary Duty

The first element of an aiding and abetting claim requires Livewire to allege a breach of the fiduciary duty owed to it. As attorneys representing Livewire, the Barkats Defendants owed a fiduciary duty to Livewire. *See, e.g.*, *Milbank, Tweed, Hadley & McCloy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994). An attorney acting with a conflict of interest can give rise to a claim for breach of fiduciary duty. *Id.*; *Estate of Re by Coarsely v. Kornstein*, 958 F. Supp. 907, 924 (S.D.N.Y. 1997). To

5

adequately plead a breach of fiduciary duty, Livewire must allege that the Barkats Defendants' conflict of interest "was at least a substantial factor" in the damages that have allegedly resulted from its decision to accept the terms of the Note. *Boon*, 13 F.3d at 543.

"Attorney conduct in New York is governed by the Code of Professional Responsibility Disciplinary Rules ['CPRDR']." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 220 F. Supp. 2d 283, 285 (S.D.N.Y. 2002). Although "the violation of a disciplinary rule does not, without more, generate a cause of action," *Petrello v. White*, 412 F. Supp. 2d 215, 226 (E.D.N.Y. 2006) (quoting *Schwartz v. Olshan Grundman Frome & Rosenzweig*, 753 N.Y.S.2d 482, 487 (1st Dep't 2003)), the disciplinary rules can provide valuable guidance to courts in assessing claims related to attorney obligations. *Cf. Hempstead Video, Inc. v. Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) ("Although our decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules, such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification.") (citations omitted).

"The conflict of interest rules 'preserve[] the client's expectation of loyalty and promotes public confidence in the integrity of the Bar.'" *Bank Brussels Lambert*, 220 F. Supp. 2d at 285-86 (quoting *Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 131 (1996)) (brackets omitted). "They are also essential to 'ensure that attorneys remain faithful to the fiduciary duties of loyalty and confidentiality owed by attorneys to their clients.'" *Id.* at 286 (quoting *Kassis v. Teacher's Insurance and Annuity Association*, 93 N.Y.2d 611, 616 (1999)). "The fiduciary duties of an attorney owed to a client are very serious. As Justice Cardozo once observed, 'not honesty alone, but the punctilio of an honor the most sensitive, is the standard of behavior.'" *Id.* (quoting *Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928)). In this case, Livewire alleges that JSB and Barkats

> blatantly breached the duty of care and/or duty of loyalty by failing to disclose or
> explain to Livewire the inherent conflict of interest with respect to AEG, including

that Mr. Barkats was a member of AEG, owned an interest in AEG, was married to [Hirsch], AEG's principal, and/or that AEG was affiliated with JSB in that they had the same office address and shared employees, including management.

TPC ¶ 76.

Hirsch argues that Livewire waived any alleged conflict in the Engagement Letter. The Engagement Letter contains a provision providing that

> [t]he firm will assist you with identifying sources of financing to pay service providers and make sure the Company is current with certain determined invoices, and will charge a $4,500 flat fee for securing such financing on your behalf and review the terms of the not [sic], *any conflicts shall be properly be waived by You in the event the funds are procured though another entity the firm may represent or partially own.* The Firm will negotiate terms with vendors and such terms will not bound [sic] your Company but the financing which will be made to you in the aggregate of approximatively $50,000 in value.

*Id.* ¶ 19 (emphasis added). Based on this provision, Hirsch argues that there has been no underlying breach of fiduciary duty and that there can therefore be no liability for aiding and abetting a breach of fiduciary duty.

As alleged, the concurrent representation of Livewire and AEG created a concurrent conflict of interest for the Barkats Defendants. Pursuant to the CPRDR,

> a lawyer shall not represent a client if a reasonabl[e] lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgement on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

22 N.Y.C.R.R. § 1201.7(a). Furthermore,

> [a] lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless: (1) the transaction is fair and reasonable to the client and the terms of the transaction are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client; (2) the client is advised in writing of the desirability of seeking, and is given a reasonable opportunity to seek, the advice of independent legal counsel on the transaction; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

7

*Id.* § 1201.8(a). In this case, the TPC plausibly alleges that a reasonable lawyer would have concluded that the simultaneous representation of Livewire and AEG by the Barkats Defendants involved the Barkats Defendants in representing differing interest and that there was a significant risk that the Barkats Defendants' professional judgment on behalf of Livewire was adversely affected by their financial interests. Moreover, Livewire plausibly alleges that the terms of the Note were not fair and reasonable. Under the circumstances of this case, these allegations are sufficient to allege a concurrent conflict of interest.

Concurrent conflicts of interest can be waived in certain circumstances. The CPRDR provide that

> [n]otwithstanding the existence of a concurrent conflict of interest . . ., a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; *and* (4) each affected client gives informed consent, confirmed in writing.

*Id.* § 1201.7(b) (emphasis added). "[T]here may be circumstances in which a conflict is not consentable[,]" *i.e.* waivable by consent. *Johnson v. Nextel Commun's, Inc.*, 660 F.3d 131, 139 (2d Cir. 2011) (citations omitted). Even assuming that Livewire's purported consent was fully informed at the time it signed the Engagement Letter,[4] the disciplinary rule also required the Barkats Defendants

---

[4] The Court notes its skepticism that the provision in the Engagement Letter stating that "any conflicts shall be properly waived by You in the event the funds are procured though another entity the firm may represent or partially own" was a valid waiver of the Barkats Defendants' conflicts of interest. TPC ¶ 19. "[C]ourts take a fairly critical view of 'blanket' future conflicts waivers." *Univ. of Rochester v. G.D. Searle & Co.*, No. 00 Civ. 6161 (LB), 2000 WL 1922271, at *10 (W.D.N.Y. Dec. 11, 2000) (citing *Worldspan, L.P. v. The Sabre Group Holdings, Inc.*, 5 F. Supp. 2d 1356, 1360 (N.D. Ga. 1998)); *see also First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 65 & n.18 (S.D.N.Y. 2017). As noted above, a client must give "informed consent, confirmed in writing" to waive a conflict. 22 N.Y.C.R.R. § 1201.7(b)(4). It is difficult to see how Livewire could have given "informed consent" to waive a future conflict that—at the time the parties signed the Engagement Letter—was purely hypothetical. Furthermore, the purported waiver refers to "conflicts" in the abstract and does not disclose the details of the specific conflict at issue. While the clause uses the term "shall," it is important to remember that the verb has multiple meanings. Merriam-Webster's on-line dictionary defines "shall" in pertinent part as follows: "1a—used to express what is inevitable or seems likely to happen in the future . . . 1b—used to express simple futurity . . . 3a—used to express a command or exhortation." https://www.merriam-webster.com/dictionary/shall (last visited January 13, 2020). It is difficult to embrace a reading of the word "shall" in this provision as a mandate that the Barkats Defendants' client waive any potential future conflict, no matter its nature or scope. Rather, a more natural—

to reasonably believe that they could provide competent and diligent representation to Livewire.

Livewire has adequately alleged that the Barkats Defendants both did not actually believe that they could provide competent and diligent representation to Livewire and, even if they did believe this was true, such belief was not reasonable. Although violation of this rule does not establish a breach of fiduciary duty *per se*, it informs the Court's conclusion that under the circumstances as alleged by Livewire in this case, its purported consent was insufficient to cure the Barkats Defendants' conflict. Accordingly, Livewire has adequately alleged a breach of fiduciary duty by the Barkats Defendants and has satisfied the first element of an aiding and abetting claim against Hirsch.

## 2. Knowing Participation and Damages

The second element of an aiding and abetting claim requires Livewire to plausibly allege that Hirsch knowingly participated in the breach. "To participate knowingly means to have 'actual knowledge, as opposed to merely constructive knowledge, and a plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty.'" *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 115 (S.D.N.Y. 2009) (quoting *Global Minerals & Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 217 (1st Dep't 2006)) (alterations omitted). "The aider and abettor must also provide substantial assistance to the primary violator." *Id.* (citing *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 170 (1st Dep't 2003)). "Under New York law, 'substantial assistance may only be found where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.'" *Id.* (quoting *Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 50 (2d Cir.

---

and sensible—reading of the "shall" in this clause is not as a command, but as a statement of simple futurity: namely as an expression of the expectation of the parties that any future conflict will be waived in the future. This reading is bolstered by the fact that the provision states that conflicts shall be "properly" waived—and, as described above, a proper waiver requires full, informed consent. However, the Court does not take a final position on whether the waiver in the Engagement Letter was effective because it need not do so to decide this motion.

9

2005)) (brackets and some quotation marks omitted).

Livewire has plausibly alleged that Hirsch had actual knowledge of the fiduciary duty owed by the Barkats Defendants to Livewire. The TPC alleges that "[u]pon information and belief, [Hirsch], by virtue of her position as principal of AEG and/or her mar[ital] relationship with Mr. Barkats, knew that the [Barkats Defendants] were counsel for Livewire in connection with the Note, and as such, knew that the [Barkats Defendants] owed a fiduciary duty to Livewire." TPC ¶ 83. This is a plausible allegation because Hirsch and Barkats are married and thus it is plausible that Hirsch knew that Barkats represented Livewire. Moreover, the TPC alleges that Hirsch is the principal member of AEG, *id.* ¶ 47, and that the Barkats Defendants "shared an office" with AEG, *id.* ¶ 81. Thus, it is plausible to infer that Hirsch had actual knowledge of the fiduciary duty owed to Livewire by the Barkats Defendants.

The TPC has also plausibly alleged that Hirsch knew that the Barkats Defendants breached their fiduciary duty to Livewire and that she provided JSB and Barkats with substantial assistance. The TPC alleges that "upon information and belief, [Hirsch] caused the Note to identify AEG's offices [as being] located at 300 East 93rd Street, New York, New York 10128, when, in fact, AEG and JSB shared offices at 18 E. 41st Street, 19th Floor, New York, New York 10017." *Id.* ¶ 87. Livewire alleges that Hirsch caused the Note to identify an incorrect address to "deceiv[e] Livewire" by concealing "the fact that AEG (and its principal) had deep business and personal relationships with" the Barkats Defendants. *Id.* ¶ 86. This allegation supports an inference that Hirsch knew that the Barkats Defendants' recommendation that Livewire accept financing from AEG was a breach of fiduciary duty because Hirsch actively sought to conceal the relationship between JSB and AEG. Hence, that allegation is sufficient to meet the pleading standard on this motion to dismiss. Accordingly, because Livewire has also plausibly alleged damages resulting from the allegedly unfair terms of the Note, Hirsch's motion to dismiss is denied as to the aiding and abetting claim.

**B. Civil Conspiracy**

Hirsch moves to dismiss Livewire's claim for civil conspiracy. "To state a claim for civil conspiracy under New York law, a plaintiff, in addition to alleging an underlying tort, must plead facts sufficient to support an inference of the following elements: '(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012) (quoting *Abacus Fed. Sav. Bank v. Lim*, 905 N.Y.S. 2d 585, 588 (1st Dep't 2010)). Here, Livewire has adequately alleged underlying torts including breach of fiduciary duty and aiding and abetting that breach, so the requirement that Livewire plead an underlying tort is satisfied.

Livewire has also plausibly alleged that there was an agreement involving at least Hirsch and Barkats. The TPC alleges that "[u]pon information and belief," AEG, Hirsch, and the Barkats Defendants "agreed that they would commit . . . constructive fraud, breach of fiduciary duty, and/or aiding and abetting breach of fiduciary duty . . . against Livewire and engaged in overt acts in furtherance of their agreement." TPC ¶¶ 117-18. It further alleges that Hirsch "participated in furthering the plan and purpose of the conspiracy" by aiding and abetting the Barkats' Defendants breaches of fiduciary duty. *Id.* ¶ 122. The TPC also alleges specific facts that make these allegations plausible, including the allegations that Hirsch deliberately attempted to conceal the location of AEG's offices so that Livewire would not discover the relationship between AEG and the Barkats Defendants. It is a reasonable inference from this allegation that Hirsch and Barkats came to an agreement to deceive Livewire into accepting the terms of the Note. Livewire has adequately pleaded numerous overt acts in furtherance of the agreement, including the presentation of the Note to Livewire. And Livewire has adequately alleged intentional participation by Hirsch and damage resulting from the conspiracy. Accordingly, Hirsch's motion to dismiss is denied as to this claim.

## IV. CONCLUSION

Hirsch's motion to dismiss the third-party claims asserted against her is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt No. 104.

SO ORDERED.

Dated: January 14, 2020
New York, New York

_____
GREGORY H. WOODS
United States District Judge