USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/28/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
AMERICAN E GROUP LLC,                                          :
:
                              Plaintiff,     :
:
                       -against-                    :        1:18-cv-3969-GHW
:
LIVEWIRE ERGOGENICS INC.,                                      :        MEMORANDUM OPINION AND
:        ORDER
                              Defendant.    :
:
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

Defendant Livewire Ergogenics Inc. borrowed $30,000 from Plaintiff American E Group LLC. In exchange, Livewire agreed to repay the loan in full in six months at an annual interest rate of 20%. Livewire also agreed to issue AEG $50,000 worth of Livewire's stock as "additional consideration" for the loan. Defendant failed to either issue the stock or pay the loan, and now argues that the implied interest rate of the loan is criminally usurious, and, thus, that the promissory note representing the loan is void. Because the usury-savings clause in the note is ineffective under New York law, the note is criminally usurious on its face. And because the amount of the loan is less than $250,000, it is void under New York's civil usury law. Accordingly, Livewire's motion to dismiss is GRANTED.

## I. BACKGROUND[1]

### A. Facts[2]

Livewire "is a non-reporting publicly-traded corporation in the business of creating and

---

[1] The Court has issued four prior opinions in this case that provide further background. *See Am. E Group LLC v. Livewire Ergogenics Inc.* (*Livewire I*), 1:18-CV-3969-GHW, 2018 WL 5447541 (S.D.N.Y. Oct. 29, 2018); *Am. E Group LLC v. Livewire Ergogenics Inc.* (*Livewire II*), 1:18-CV-3969-GHW, 2019 WL 3553293 (S.D.N.Y. Aug. 5, 2019); *Am. E Group LLC v. Livewire Ergogenics Inc.* (*Livewire III*), No. 1:18-CV-3969-GHW, 2020 WL 137110 (S.D.N.Y. Jan. 13, 2020); *Am. E Group LLC v. Livewire Ergogenics Inc.* (*Livewire IV*), No. 1:18-CV-3969-GHW, 2020 WL 209903 (S.D.N.Y. Jan. 14, 2020).
[2] The facts are drawn from the Second Amended Complaint ("SAC"), Dkt No. 175, and are accepted as true for the

developing nutritional products, acquiring and licensing special purpose real estate properties, and the management of legal, fully-controlled and self-contained greenhouses on such properties." SAC ¶ 11. In 2015, Livewire sought funding to continue its operations. *Id.* ¶ 13. In November 2015, Livewire was introduced to AEG as a potential source of funding. *Id.* ¶ 15. AEG initially sought a personal guarantee of the value of the loan from Livewire CEO Bill Hodson. *Id.* ¶ 16. However, Hodson refused to execute a personal guarantee. *Id.* Eventually, AEG agreed to loan Livewire $30,000 without a personal guarantee from Hodson because Livewire agreed to grant AEG $50,000 of restricted stock in Livewire. *Id.* ¶ 17.

In connection with the loan, Livewire executed a promissory note (the "Note"). *Id.* ¶ 19. The Note is attached as an exhibit to the SAC. Dkt No. 175-1. The Court described the terms of the Note in a previous opinion in this case. *See Livewire I*, 2018 WL 5447541, at *1-2. As the Court previously explained:

> Defendant promised to repay the principal amount of the loan six months after the date of the Note (the "Maturity Date"). Defendant also agreed to pay interest on the Note at a rate of 20% per annum, due in full on the Maturity Date.
>
> The Note also required Defendant to pay additional consideration for the loan through the issuance of stock to Plaintiff. The Note provided that
>
>> Moreover, as additional consideration for this Note, the Borrower will give to the Lender restricted shares of the Borrower equal to US$50,000.00 (the "Restricted Shares") that will be convertible to freely tradeable shares on the Maturity Date. The Borrower will provide to the Lender, at the Borrower's expense, an opinion of counsel stating that, on the Maturity Date, the Restricted Shares are freely transferrable pursuant to SEC Rule 144A . . . .
>
> The Note set forth a number of events of default and described the consequences of those defaults. Failure by Defendant to pay the principal and interest on the Note within 30 days after the Maturity Date constituted an event of default. The Note included a particularly rich bounty for Plaintiff following the occurrence of such a default: "if an Event of Default shall occur, then the Restricted Shares shall be freely

---

purposes of this motion to dismiss. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

transferable and this Note shall be immediately convertible to ten (10) times the liquidated value of the Indebtedness."

The Note contained a cap on the maximum interest rate that could be charged pursuant to its terms. Section 5 ["Section 5"] reads as follows

> **Maximum Interest Rate:** In no event shall any agreed to or actual interest charged, reserved or taken by the Lender as consideration for this Note exceed twenty percent (20%). In the event that the interest provisions of this Note shall result at any time or for any reason in an effective rate of interest that exceeds twenty percent (20%), then without further agreement or notice the obligation to be fulfilled shall be automatically reduced to such limit and all sums received by the Lender in excess of those lawfully collective as interest shall be applied against the principal of this Note immediate upon the Lender's receipt thereof . . . .

Section 7 ["Section 7"] of the Note expressly provided for the severability of unenforceable provisions of the Note. The relevant language from the Note is quoted below.

> **Severability:** If any provision of this Note is, for any reason, invalid or unenforceable, the remaining provisions of this Note will nevertheless be valid and enforceable and will remain in full force and effect. Any provision of this Note that is held invalid or unenforceable by a court of competent jurisdiction will be deemed modified to the extent necessary to make it valid and enforceable and as so modified will remain in full force and effect.

The Note is governed by New York law.

*Id.* (citations and footnote omitted) (ellipses in original).

The Note also provides that "[i]n the event that this Note, or any part hereof, is collected by or through an attorney-at-law, the Borrower shall pay all costs of collection, including, but not limited to, reasonable attorneys' fees." Note § 4. In addition, in a section titled "Entire Agreement[,]" the Note states

> [t]his Note (including any recitals hereto) sets forth the entire understanding of the parties with respect to the subject matter hereof, and shall not be modified or affected by any offer, proposal, statement or representation, oral or written, made by or for any party in connection with the negotiation of the terms hereof, and may be modified only by instruments signed in writing by all of the parties hereto.

Note § 13.

3

The SAC alleges that Livewire failed to deliver the Restricted Shares upon the execution of the Note. SAC ¶ 25. The SAC also alleges that "Hodson, as [Livewire's] CEO, and as its majority shareholder, had almost complete control over [Livewire], and had control over the determination of whether [Livewire] would comply with the Note and the actions required to comply therewith." *Id.* ¶ 26. According to the SAC, "Hodson caused [Livewire] to breach its obligations under the Note to deliver the shares of [Livewire] stock so that he could maintain control over [Livewire]." *Id.* ¶ 27. Livewire "failed to pay the $30,000, together with interest at the rate of 20% per annum on the Maturity Date." *Id.* ¶ 28.

**B. Procedural History**

AEG initiated this lawsuit on May 3, 2018, Dkt No. 1, and filed an amended complaint on May 10, 2018, Dkt No. 7. Livewire filed a motion to dismiss on June 8, 2018, arguing that the Note was criminally usurious. Dkt Nos. 22-23. The Court denied that motion because it could not "determine that the Note was criminally usurious on its face" on the basis of the briefing presented by the parties. *Livewire I*, 2018 WL 5447541, at *1. The Court concluded that "but for section 5, the Note is criminally usurious on its face." *Id.* at *3 (capitalization altered).[3] The Court noted that the parties' briefing did not address the effect of the savings clause on the usury analysis. *Id.* at *5 ("Oddly, neither part[y] discusses the impact of Sections 5 and 7 of the Note in their briefing.").

---

[3] In its opposition, AEG objects to the Court's statement in *Livewire I* that "Defendant states that it was not aware of its lawyer's relationship with the lender at the time the loan was negotiated and that 'the criminal[ly] usurious interest rate set forth in the note was the result of Mr. Barkat[s'] sham negotiations with his wife or himself.'" Memorandum of Law in Opposition to Motion to Dismiss ("Opp."), Dkt No. 209, at 7 (quoting *Livewire I*, 2018 WL 5447541, at *1 n.1). AEG argues that the Court reached this "damaging conclusion[] without the benefit of having seen any of the applicable documents that exist or having heard any 'testimony' via depositions or affidavits." *Id.* This argument is ill conceived for the simple reason that the statement referenced in a footnote of *Livewire I* was not a conclusion or factual finding by the Court. That this is the case should be quite evident from the placement of the statement in a footnote in the opinion, rather than in the decision's description of the relevant facts. It is also clear from the wording of the statement itself: "Defendant states . . . ." It should not require careful parsing to distinguish between a court's description of a party's position on an issue (*e.g.* "Defendant states"), and a finding with respect to the issue (*e.g.* "the Court finds"). The footnote merely provided context for the broader dispute. The Court's decision did not rely on the reference to Defendant's statement of its position; instead, the Court's decision in *Livewire I* expressly relied solely on the complaint and documents integral to it, or incorporated by reference in it.

4

Without the benefit of briefing on the issue of whether Section 5 or 7 could render the Note nonusurious, the Court declined to dismiss AEG's claims based on Livewire's usury defense. *Id.* In a subsequent conference, the Court invited further briefing on that issue.

On December 7, 2018, Plaintiff filed a motion requesting leave to amend the complaint. Dkt No. 61. The Court granted that motion in part and denied it in part. *Livewire II*, 2019 WL 3553293, at *1. AEG proposed to amend the complaint to "characterize the Note as reflecting two separate transactions—a loan, and a separate purchase of shares[.]" *Id.* at *3. However, the Court held that "[t]he Note unambiguously states that the issuance of Restricted Shares was in consideration for the issuance of the Loan." *Id.* Therefore, the Court concluded that Plaintiff's request to amend on this ground was futile—*i.e.*, that it could not survive a motion to dismiss. *Id.*[4]

The Court also held that Plaintiff's proposed tortious interference with contractual relations claim against Hodson was not futile. *Id.* at *4. The Court concluded that AEG "specifically pleads that Hodson personally owned a majority stake in Livewire, and that his personal interest in, and control over, the company would be diluted as a result of the issuance of stock pursuant to the Note." *Id.* (citation omitted). This was sufficient for the Court to conclude that the proposed amendment adding a tortious interference claim was not futile.

AEG filed the SAC on August 29, 2019. Dkt No. 175. The SAC asserts five claims for relief. First, the SAC asserts a claim against Livewire for enforcement of the terms of the Note. SAC ¶¶ 31-36. This claim seeks payment of $33,000—the amount that Livewire was allegedly

---

[4] AEG ignored this holding in its SAC. The SAC states that the Note "was intended to include two separate transactions." SAC ¶ 19. The Court (again) rejects AEG's characterization of the Note as two separate transactions. The Court also reminds counsel for AEG of his obligations under Federal Rule of Civil Procedure 11. That rule states that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(2). Because the Court has already rejected the argument that the Note should be characterized as two separate transactions, there is a strong argument that AEG's assertion of this argument in the SAC is frivolous.

required to pay on the Maturity Date under the terms of the Note—plus interest from the Maturity Date. Second, the SAC asserts a claim for enforcement of the conversion-of-stock provision the Note. *Id.* ¶¶ 37-42. This claim asserts that AEG is entitled to convert ten times the liquidated value of the indebtedness under the Note to shares of Livewire stock. Because Livewire allegedly owed AEG $33,000, AEG asserts that it is entitled to $330,000 worth of Livewire common stock. Third, AEG asserts a claim for breach of contract for the costs of collection under the Note. *Id.* ¶¶ 43-48. Fourth, AEG asserts a claim for tortious interference with contract against Hodson. *Id.* ¶¶ 49-55. Fifth, the SAC asserts a claim for unjust enrichment against Livewire. *Id.* ¶¶ 56-60. In *Livewire II*, the Court noted that it understood that the unjust enrichment claim is "pleaded in the alternative, in the event that the Court ultimately concludes that the Note is unenforceable." 2019 WL 3553293, at *2.

Livewire filed its motion to dismiss on October 4, 2019. Dkt Nos. 199, 201. AEG filed its opposition on October 21, 2019. Dkt No. 209. Livewire filed its reply on November 8, 2019. Dkt No. 213.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. *See Palin v. N.Y. Times Co.*, 933 F.3d 160, 165 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*

6

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544). Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to "facts stated on the face of the complaint." *Goel*, 820 F.3d at 559. However, "extrinsic documents may be considered as part of the pleadings if they either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *Id.* (quotation omitted). For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon the documents in framing the complaint.'" *Id.* (quoting *Chambers*, 282 F.3d at 153) (brackets omitted). "'Mere notice or possession is not enough' for a court to treat an extraneous document as integral to a complaint; the complaint must 'rely heavily upon the document's terms and effect'" for that document to be integral." *Id.* (quoting *Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). While the Court must accept

7

the facts as alleged in the complaint, "when any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002).

In deciding this motion, the Court has considered the Note because it is attached to the complaint. Dkt No. 175-1. However, the Court has not considered the numerous documents attached to AEG's opposition to this motion. Dkt No. 209-1 *et seq*. These documents are not attached to the SAC. They are also not incorporated by reference because the SAC does not make a clear, definite, and substantial reference to the documents. And they are not integral to the complaint because the SAC does not rely heavily upon the terms of these documents. Hence, the Court did not consider these attachments in resolving the motion to dismiss.

## III. DISCUSSION

### A. The Note Is Still Unambiguous.

In its opposition, AEG renews its argument that the terms of the Note are ambiguous. This is the third time that AEG has raised an argument that the Note is ambiguous. The argument fairs no better the third time around. *Cf. South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2102 (2018) (Roberts, C.J., dissenting) ("Whatever salience the adage 'third time's a charm' has in daily life, it is a poor guide to Supreme Court decisionmaking."). In this iteration of its argument that the Note is ambiguous, AEG focuses its argument on the term "additional consideration." AEG argues that the provision in the contract stating that "as additional consideration for this Note, the Borrower will give to the Lender restricted shares of the Borrower equal to US$50,000.00," Note at 1, is ambiguous as to whether the Restricted Shares were provided as consideration for AEG to make the Loan or as part of a separate transaction as an inducement for AEG to make the Loan. *See* Opp. at 12 (stating that "plaintiff's position" is "that the restricted Stock granted to plaintiff for making the

8

loan to a company such as Livewire, which was in dire financial straits at the time, is to be classified as an inducement to make the loan rather than finding that same is to be considered in the interest calculation and thereby invalidate the transaction") (emphasis omitted).

The Court has already rejected this argument. In *Livewire II*, the Court considered AEG's argument that "the Note 'was intended to include two separate transactions. The first transaction was a loan . . . . The second transaction was essentially a purchase by Plaintiff of $50,000 worth of . . . stock . . . the consideration for which was the making of the loan without a personal guarantee from Hodson[.]'" 2019 WL 3553293, at *3 (quoting proposed SAC ¶¶ 19-20). But the Court held, in no uncertain terms, that "[t]he unambiguous language of the Note makes it clear that there was one transaction, and that the stock was to be issued as consideration for the Note." *Id.*[5] Because the pleading standard for a motion to amend requires that the Court consider whether "a proposed claim could . . . withstand a motion to dismiss pursuant to Rule 12(b)(6)[,]" *id.* at *2 (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87-88 (2d Cir. 2002)), the Court has already held that these allegations do not state a claim for relief that is plausible on its face.[6] The Court adheres to that decision here.[7]

### B. But for Section 5, the Note is Still Criminally Usurious on its Face.

In *Livewire I*, the Court held that but for section 5 of the Note, it was criminally usurious on

---

[5] As noted above, AEG inexplicably included these very same allegations in the SAC it filed after the Court had already rejected its arguments in *Livewire II*. *Compare* SAC ¶¶ 19-20 *with Livewire II*, 2019 WL 3553293, at *3.

[6] As support for its theory that the Restricted Stock was an "inducement" to contract rather than consideration for the loan, AEG relies on *In re Lico Mfg. Co.*, 201 F. Supp. 899, 904 (D. Conn. 1961) (citing *Cohen v. Mansi*, 154 A. 160, 161 (Conn. 1931))—decided under Connecticut law more 58 years ago—and *Cohen*, which was decided 88 years ago and also applied Connecticut law. Moreover, AEG admits that "counsel has not found any . . . case law in New York" supporting its position. Opp. at 14. Whatever persuasive value these cases may have in general, their logic does not apply in this case because the Note expressly states that the Restricted Stock is offered "as additional consideration for the Note[.]" Note at 1.

[7] If AEG wishes to seek reconsideration of the Court's opinion in *Livewire II*, it can bring a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the Court's judgment in that case. However, the Court observes that the time for making such a motion has passed and thus the Court would likely conclude that such a motion was untimely. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). In any event, because the Note unambiguously declares that the Restricted Stock is consideration for the loan, the Court would not deviate from the views expressed in *Livewire II* on a motion for reconsideration.

9

its face. *See* 2018 WL 5447541, at *3-5. The Court held that:

> The parties agree that if the interest rate charged on the Note is usurious in violation of New York Law, it is void and unenforceable.[8] New York's civil usury restrictions forbid charging interest at a rate in excess of 16% annually. As a general matter, however, corporations and limited liability companies may not assert a civil usury defense. However, limited liability companies, such as Defendant here, are not barred from raising criminal usury as an affirmative defense.
>
> Under Section 190.40 of New York's Penal Law, a loan is criminally usurious when the lender charges as interest on the loan a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period. Criminal usury requires proof that the lender (1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance.
>
> Usury is an affirmative defense and a heavy burden rests upon the party seeking to impeach a transaction for usury. An essential element of the affirmative defense of usury is the lender's usurious intent, and such intent remains a question of fact and will not be presumed where a note states a legal rate of interest. Yet, the defense of usury does not require proof of specific intent: a loan is usurious if the lender intends to take and receive a rate of interest in excess of that allowed by law even though the lender has no specific intent to violate the usury laws.
>
> To determine whether the interest rate charged on the Note is criminally usurious in violation of Section 190.40, the Court is not limited to looking only at the Note's stated rate of interest, here 20%. Instead, the Court may consider the substance of the transaction to determine whether the effective rate of interest exceeds 25%.
>
> Plaintiff argues that the valuation of the Restricted Stock to be received by Plaintiff pursuant to the Note is uncertain, giving rise to a question of fact that cannot be resolved in the context of a motion to dismiss. Plaintiff argues that the Note is not criminally usurious on its face because additional evidence is required to ascertain the actual value of the stock. And, indeed, when the value of such consideration is unclear from the face of the transaction documents, the criminal usury defense cannot be established on the basis of the pleadings.[9]

---

[8] AEG objects to this statement because, according to AEG, it has never made that submission to the Court. Opp. at 8 (quoting *Livewire I*, 2018 WL 5447541, at *3). As support for its statement in *Livewire I*, the Court cited AEG's Memorandum of Law in Opposition to Motion to Dismiss ("First Opp."), Dkt No. 25, at 9-10. In the Court's view, those pages provide adequate justification for the Court's statement in *Livewire I*. Certainly, AEG did not raise an argument to the contrary in its opposition to the prior motion to dismiss. However, the Court addresses the argument that under New York law a criminally usurious note is not void in the next section.

[9] AEG again challenges the Court's prior conclusion, this time taking issue with the Court's conclusion that "the value of the Restricted Stock to be provided pursuant to the Note is unambiguous" and thus did not raise a question of fact that could be adjudicated on a motion to dismiss. *Livewire I*, 2018 WL 5447541, at *5. In presenting this argument, AEG quotes at length from two cases that the Court itself cited in *Livewire I*. *See* Opp. at 16-21 (quoting *Sabella v. Scantek Med., Inc.*, 08 CIV. 453(CM)(HBP), 2009 WL 3233703 (S.D.N.Y. Sept. 25, 2009); *Hillair Capital Inv., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336 (S.D.N.Y. 2013)); *see Livewire I*, 2018 WL 5447541, at *4 (citing *Sabella* and *Hillair*). Unsurprisingly, the Court is not persuaded by AEG's recitation of case law that the Court had already considered in

> Here, however, the value of the Restricted Stock to be provided pursuant to the Note is unambiguous. The Note states that, as additional consideration for this Note, Defendant will give to Plaintiff restricted shares of Defendant equal to $50,000 that will be convertible to freely tradeable shares on the Maturity Date. Plaintiff was clearly entitled to receive Restricted Stock with a value of $50,000 on the date of issuance—not a particular number of shares with an estimated value as of either the date of issuance or the Maturity Date. Plaintiff's arguments that the value of the Restricted Shares might have changed following the date of their issuance are not pertinent. The Note called for Plaintiff to be provided assets worth $50,000 as consideration for the loan. The monetary value of the Restricted Stock to be delivered pursuant to the Note is unambiguous[;] therefore[,] the implied interest rate can be determined from the face of the Note.[10] If the analysis ended there, the implied interest rate of the Note would greatly exceed 25% and the Note would be criminally usurious and void.[11]

*Id.* (citations, brackets, ellipses, footnote and quotation marks omitted).[12] There is no persuasive justification to depart from these holdings. Accordingly, the Court reaffirms its holdings in *Livewire I* that but for Section 5 the Note is criminally usurious on its face. The Court takes up the argument that Section 5 saves the Note in the next subsection.

---

rendering its opinion in *Livewire I*. Because "[t]he Note called for Plaintiff to be provided assets worth $50,000 as consideration for the loan," the Court does not change its view that the Note did not raise an issue of fact as to the value of the Restricted Stock requiring denial of the motion to dismiss. *Livewire I*, 2018 WL 5447541, at *5.

[10] Once again, AEG challenges a conclusion the Court reached in *Livewire I* by arguing that the Note is not criminally usurious on its face because the stated interest rate in the Note is only twenty percent. *See* Opp. at 16. But, as the Court's analysis in *Livewire I* makes abundantly clear, the value of the Restricted Stock—$50,000 according to the unambiguous terms of the Note—can be included in determining the effective interest rate because "the Court is not limited to looking only at the Note's stated rate of interest" but rather "may consider 'the substance of the transaction to determine whether the effective rate of interest exceeds 25%.'" 2018 WL 5447541, at *4 (quoting *Union Capital LLC v. Vape Holdings Inc.*, No. 16-cv-1343 (RJS), 2017 WL 1406278, at *4 (S.D.N.Y. Mar. 31, 2017) (Sullivan, J.)); *see also* N.Y. Gen. Oblig. Law 5-501(2) ("The amount charged, taken or received as interest shall include any and all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for making the loan or forbearance . . . ."). The Court does not deviate from that holding here.

[11] As noted above, the Court based its holding that a criminally usurious note was necessarily void on the parties' submissions in *Livewire I*. AEG now disputes that premise, and the Court considers whether the Note is void later in this opinion.

[12] AEG also inexplicably objects to the Court's statement in *Livewire I* that "[b]oth parties agree that the value of the stock Defendant was required to deliver as consideration for the loan can be considered to determine whether the effective interest rate on the loan exceeds the 25% cap imposed by New York's criminal usury statute." Opp. at 3 (quoting *Livewire I*, 2018 WL 5447541, at *1) (emphasis omitted). Again, AEG argues that it never made any such submission to the Court. However, later in its opinion in *Livewire I*, the Court noted that "[t]he parties correctly agree that the Court should consider the value of the Restricted Stock to determine whether the Note's terms are criminally usurious," 2018 WL 5447541, at *4, and quoted Livewire's opposition to the motion to dismiss as stating that Livewire "correctly asserts that the value of stock may be included in determining the actual rate of interest of a promissory note or other instrument." *Id.* (quoting First Opp. at 8). Thus, contrary to AEG's argument in its opposition to this motion to dismiss, it did in fact agree that the value of the Restricted Stock should be considered in determining the rate of interest on the Note. And rightly so, as this is a correct statement of New York law. *See Livewire I*, 2018 WL 5447541, at *4 (citing *Hillair Capital*, 963 F. Supp. 2d at 340; *Sabella*, 2009 WL 3233703, at *17).

11

**C. Section 5 Does Not Render the Note Non-Usurious.**

Given the Court's prior holdings, the principal issue raised by the instant motion is whether the Court should void the Note or give effect to Section 5 of the Note. Section 5 of the Note states

> [i]n the event that the interest provisions of this Note shall result at any time or for any reason in an effective rate of interest that exceeds twenty percent (20%), then without further agreement or notice the obligation to be fulfilled shall be automatically reduced to such limit and all sums received by the Lender in excess of those lawfully collective as interest shall be applied against the principal of this Note immediate upon the Lender's receipt thereof . . . .

Note § 5.

Courts applying New York law have held that usury-savings clauses like Section 5 do not save an otherwise usurious note.[13] Twenty years ago, the Second Circuit observed that the question of whether courts should give effect to a usury-avoidance provision was a "knotty and undecided question[] of New York law[.]" *Fed. Home Loan Mortg. Corp.*, 201 F.3d at 241. The New York Court of Appeals still has not had occasion to decide the question of whether usury-avoidance provisions are effective under New York law. However, "[a]s a federal court applying state law, [the Court is] generally obliged to follow the state law decisions of state intermediate appellate courts." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005). Therefore, the Court adopts the rule established in New York intermediate appellate courts that "language purporting to reduce the interest rate to the legal rate in the event of a finding of usury, do not make the subject agreements

---

[13] *See Bakhash v. Winston*, 19 N.Y.S.3d 887, 887 (1st Dep't 2015) (holding that a clause in a note stating "in no event shall the rate of interest payable hereunder exceed the maximum interest permitted to be charged by applicable law and any interest paid in excess of the permitted rate shall be credited to principal and any balance refunded to" defendant did "not make the subject note nonusurious") (citing *Simsbury Fund, Inc. v. New St. Louis Associates*, 611 N.Y.S.2d 557, 557 (1st Dep't 1994) ("[L]anguage purporting to reduce the interest rate to the legal rate in the event of a finding of usury, do not make the subject agreements nonusurious."); *Fred Schutzman Co. v. Park Slope Advanced Med., PLLC*, 9 N.Y.S.3d 682, 682 (2d Dep't 2015) ("[A] clause in the subject promissory note purporting to reduce the rate of interest to a non-usurious rate if the rate originally imposed was found to be usurious could not save the note from being usurious.") (citing Simsbury, 611 N.Y.S. at 557); *Hillair Capital*, 963 F. Supp. 2d at 338 n.1 ("Under New York law, the "usury avoidance clause" does not, by itself, save an agreement from a charge of usury.") (citing *Simsbury*, 611 N.Y.S. at 557; *DeStaso v. Bottiglieri*, 901 N.Y.S.2d 905 (Sup. Ct. 2009); *Roswell Capital Partners LLC v. Alt. Const. Techs.*, 08 Civ. 10647, 2009 WL 222348, at *15 n. 13 (S.D.N.Y. Jan. 30, 2009); *Fed. Home Loan Mortg. Corp. v. 333 Neptune Ave. Ltd. P'ship*, 92 Civ. 5083, 1999 WL 390837, at *2-3 (E.D.N.Y. Apr. 15, 1999)), *vacated*, 201 F.3d 431 (2d Cir. 1999) (unpublished disposition).

nonusurious." *Simsbury Fund*, 611 N.Y.S.2d at 557. Accordingly, the Court holds that the Note is criminally usurious on its face.[14] The same logic compels the conclusion that Section 7, the Note's severability clause, does not render the Note non-usurious. *See Case Cash Funding, LLC v. Gilberg*, 57 N.Y.S.3d 674, 674 (Table) (2d Dep't 2017) ("The severability clause of the Agreement is likewise ineffective to save the Agreement if its terms are usurious.") (citing *Bakhash*, 19 N.Y.S.3d at 887; *Fred Schutzman Co.*, 9 N.Y.S.3d at 682; *Simsbury Fund*, 611 N.Y.S.2d at 557).

**D. The Note Is Void.**

Because the Note is criminally usurious, the next issue is whether the Court should void the Note or reduce the effective interest rate to a non-usurious rate. New York law is clear that civilly usurious notes are void. *See* N.Y. Gen. Obdig. Law § 5-511. However, "there is no specific statutory authority for voiding a loan that violates the criminal usury statute only." *EMA Fin., LLC v. AIM Expl., Inc.*, 18 CIV. 145 (ER), 2019 WL 689237, at *7 (S.D.N.Y. Feb. 19, 2019) (citation omitted); *see Venture Mortg.*, 282 F.3d at 190 n.4 (2d Cir. 2002) ("§ 5-511 voids a loan that violates the civil usury statute (§ 5-501) but says nothing about a loan that violates the criminal usury statute[.] So there seems to be no specific authority for voiding a loan that violates the criminal usury statute without violating the civil usury statute.").

In *Venture Mortgage*, the Second Circuit discussed the possible rationales for and against voiding a criminally usurious loan:

> On the one hand, it may be expected (as the parties to this appeal evidently assume) that one who commits criminal usury should not be preferred (and be able to collect)

---

[14] There is an argument that Section 5 could negate the intent element required to prove criminal usury. However, criminal usury "does not require proof of specific intent; '[a] loan is usurious if the lender intends to take and receive a rate of interest in excess of that allowed by law even though the lender has no specific intent to violate the usury laws.'" *Sabella*, 2009 WL 3233703, at *17 (quoting *In re Venture Mortg. Fund, L.P.*, 282 F.3d 185, 188 (2d Cir. 2002)). A bankruptcy court in this district has rejected the argument that a usury-savings clause negates the intent element of a criminal usury claim. *See In re BH Sutton Mezz LLC*, No. AP 16-01187 (SHL), 2016 WL 8352445, at *36-37 (Bankr. S.D.N.Y. Dec. 1, 2016) (rejecting the argument that "a 'usury savings clause' or a 'usury avoidance clause'" negates the intent element of criminal usury for an otherwise criminally usurious loan). AEG has not presented any argument on this point. Hence, on the facts presented in this case, Section 5 does not negate the intent element for a criminally usurious note.

13

over the usurer who charges a rate of interest that is not criminal. On the other
hand, the larger the loan transaction, the less likely it is that the borrower needs or
deserves financial protection; moreover, the greater the amount of forfeiture, the
more unsettling it becomes to financial arrangements. As the New York courts have
recognized, the consequences to a lender of voiding a usurious loan transaction are
harsh: the borrower is relieved of all further payment—not only interest but also
outstanding principal, and any mortgages securing payment are cancelled. In effect,
the borrower can simply keep the borrowed funds and walk away from the
agreement. Presumably for these reasons, no New York usury law prohibits, voids,
or regulates transactions over $2.5 million, a financial plane above which all players
apparently are deemed to be able to fend for themselves.

282 F.3d at 189 (quotation and citations omitted). The Circuit noted that a criminally usurious note might not be void *ab initio* but rather that a successful criminal usury defense might result "in a cancellation of the interest obligation but not the obligation to pay principal, or in a revised obligation to pay a non-usurious rate[.]" *Id.* at 189 n.3. Since *Venture Mortgage*, a split of authority has developed among courts interpreting New York law as to whether the appropriate remedy if a court concludes that a note is criminally usurious is to reduce the rate of interest to a non-usurious rate or to void the note in its entirety.[15]

The Court need not reach the question of whether to void a note that violates only the criminal usury statute, however, because the loan at issue in this case violates both the criminal usury statute and the civil usury statute. In such a situation, the loan is subject to the voiding provision

---

[15] *Compare Carlone v. Lion & The Bull Films, Inc.*, 861 F. Supp. 2d 312, 323 (S.D.N.Y. 2012) ("The better approach, at least in circumstances like those presented here, is to void only the usurious interest rate, not the entire loan agreement."); *Prof. Merchant Adv. Capital, LLC v. C Care Services, LLC*, 13-CV-6562 RJS, 2015 WL 4392081, at *5 (S.D.N.Y. July 15, 2015) ("If the Court were to find that the Agreement contravened New York's criminal usury law, the Court would nevertheless not void the Agreement *ab initio,* but would rather revise the interest obligation to require a non-usurious rate.") (citations omitted); *BH Sutton Mezz LLC*, 2016 WL 8352445, at *38 ("Following the reasoning of the Second Circuit in *Venture Mortgage* and subsequent decisions, this Court will not hold the Building Loan void *ab initio*. Instead, considering the sophistication of the parties here and all the facts and circumstances of this case, the Court finds the appropriate remedy is to revise the interest obligation on the Building Loan to an appropriate non-usurious rate."); *Funding Group, Inc. v. Water Chef, Inc.*, 852 N.Y.S.2d 736, 743 (N.Y. Sup. Ct. 2008); *Koenig v. Slazer Enterprises, Owner, LLC*, 910 N.Y.S.2d 405 (N.Y. Sup. Ct. 2010) (Table) *with Union Capital*, 2017 WL 1406278, at *4 ("Under New York law, a contract is criminally usurious, and thus void, when the parties knowingly provided for an interest rate of 25% or more."); *Kingsize Ent., LLC v. Martino*, 63 N.Y.S.3d 714, 715 (2d Dep't 2017) ("[A] loan that is criminally usurious is void.") ; *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*, 961 N.Y.S.2d 86, 90 (1st Dep't 2013) ("Since ASI has successfully asserted criminal usury as an affirmative defense, the loan transaction and the associated note, loan agreement, and collateral agreement are void and unenforceable.") (citations omitted); *Roopchand v. Mohammed*, 62 N.Y.S.3d 514, 517 (2d Dep't 2017) ("[A]n action by a lender on a usurious loan is impermissible.") (citations omitted).

14

contained in the civil usury statute. The voiding provision in New York's usury law is stated in mandatory terms: "All bonds, bills, notes . . ., and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, *shall be void.*" N.Y. Gen. Oblig. Law § 5-511 (emphasis added). The Note calls for the payment of interest in excess of 16 percent—the rate at which a note is deemed civilly usurious—and secures a loan of less than $250,000.[16] N.Y. Gen. Oblig. Law § 5-501(1), (2), (6). Therefore, pursuant to Section 5-511 of the General Obligation Law, the Note is void.

Section 5-511 applies to loans found to fall within its terms as a consequence of a successful criminal usury defense, even where, as here, the borrower was prohibited from asserting civil usury as an affirmative defense. The Second Department discussed this principle in *Fred Schutzman Co.*

> Although a corporation or professional limited liability company (hereinafter PLLC), or an individual guarantor of such an entity's debt, may not assert the defense of civil usury . . . a corporation or PLLC, or a guarantor of such an entity's debt, may assert the defense of criminal usury. Contrary to the plaintiff's contention, even though the defendants in this case would have been precluded from interposing the defense of usury if the note had not been criminally usurious, the note imposed an annual interest rate in excess of 16%, and since that rate was more than the rate prescribed in General Obligations Law § 5–501 . . . , the note was void, pursuant to General Obligations Law § 5–511.

*Fred Schutzman Co.*, 9 N.Y.S.3d at 683.

This conclusion rests on sound principles of statutory interpretation. As discussed in *Livewire I*, Section 1104 of New York's General Obligations Law states that "[n]o domestic or foreign limited liability company shall hereafter interpose the defense of usury in any action.," N.Y. Gen. Oblig. Law § 1104(a), but that this limitation "shall not apply to any action in which a limited

---

[16] The statute contains an exception, not applicable here, for any "loan or forbearance secured primarily by an interest in real property improved by a one or two family residence." N.Y. Gen. Oblig. Law 5-501(6).

15

liability company interposes a defense of criminal usury." *Id.* § 1104(c); *see also Livewire I*, 2018 WL 5447541, at *3 ("As a general matter . . . corporations and limited liability companies may not assert a civil usury defense. However, limited liability companies, such as Defendant here, are not barred from raising criminal usury as an affirmative defense.") (citations omitted). By its terms, Section 1104 limits the ability of a limited liability company debtor to "interpose" a defense of civil usury. Thus, the statute constrains a company's ability to assert or raise the defense. *See, e.g.*, Black's Law Dictionary (10th ed. 2014) ("Interposition" 1. The act of submitting something (such as a pleading or motion) as a defense to an opponent's claim."). The statute does not state that the civil usury laws do not apply to contracts entered into by such an entity. And as noted above, the voiding provision of the civil usury statute is stated in mandatory terms, voiding all loans that fall within its criteria, without exception for loans made to a company. As a result, while a limited liability company cannot affirmatively raise a defense of civil usury, if, in response to an effective defense of criminal usury, a court finds that a loan violates the civil usury law, the loan "shall be void." N.Y. Gen. Oblig. Law § 5-511.

This conclusion applies in a narrow set of circumstances. If AEG's counterparty were a natural person—rather than a corporate entity—there would be no question regarding her ability to raise the defense of civil usury under Sections 5-501 and 5-511 of the General Obligation Law from the outset. And if the amount of the loan were greater than $250,000, Sections 5-501 and 5-511 would not apply at all. However, notwithstanding the statutory limitation on a corporate borrower's ability to "interpose" a civil usury defense at the outset of the case, in the narrow circumstances presented in this case—where the amount of the loan is less than $250,000, and a corporate borrower successfully pursues a criminal usury defense—Sections 5-501 and 5-511 apply. Accordingly, the Note is void and AEG's claims based on breach of the Note and for the costs of collection on the Note are dismissed.

**E. The Liquidated Damages Provision in the Note Is an Unenforceable Penalty.**

Livewire moves to dismiss AEG's claim seeking to enforce the default provision in Section 4 of the Note. That provision states that "if an Event of Default shall occur, then the Restricted Shares shall be freely transferable and this Note shall be immediately convertible to ten (10) times the liquidated value of the Indebtedness." Note § 4. Based on this provision, AEG claims that it is entitled to $330,000—ten times the $33,000 allegedly due on the Maturity Date, six months after the Note's issuance.

Courts applying New York law do not enforce liquidated damages provisions if they are disproportionate to a lender's potential loss.

> Under New York law, courts will uphold and enforce liquidated damages provisions where (1) actual damages are difficult to determine and (2) the amount of damages awarded pursuant to the clause is not clearly disproportionate to the potential loss. While the New York Court of Appeals has cautioned that courts should be reluctant to interfere with liquidated damages provisions, if the clause in question does not satisfy one or both of these factors then it is considered an impermissible penalty and will not be enforced by the courts. In other words, if such a clause is intended to operate as a means to compel performance, it will be deemed a penalty and will not be enforced. The party seeking to avoid imposition of the liquidated damages provision . . . bears the burden of proving that the clause operates as a penalty. Moreover, in assessing if a liquidated damages provision functions as a penalty, courts are to consider whether damages were ascertainable and the liquidated damages amount was unreasonable as of the time of contracting, not the time of the breach. Courts must also consider the sophistication of the parties and whether they were represented by counsel.

*Union Capital*, 2017 WL 1406278, at *7 (quotations, citations, and brackets omitted).

In this case, the value of the liquidated damages provision is clearly disproportionate to the potential loss. AEG "offers no explanation for how" the damages provision "is even conceivably linked to the damages" it suffered as a result of Livewire's default. *Id.* Courts routinely find that liquidated damages provisions that provide for far less than ten times the alleged amount of loss suffered are void as unenforceable penalty provisions. *See, e.g.*, *id.* (declining to enforce a liquidated damages provision of $362,280.93 on a $75,000 note).

AEG argues that whether the liquated provision is reasonable is a question of fact that the Court cannot resolve without hearing expert testimony. While it may be true in certain circumstances that the Court is required to hear expert testimony to determine if a default provision is reasonable, it is not true in this case. The Note unambiguously states that AEG is entitled to ten times the value of the indebtedness in the event of a default. This is an unreasonable and unenforceable penalty as a matter of law. *See Union Capital*, 2017 WL 1406278, at *7 (declining to enforce a liquidated damages provision at the motion to dismiss stage). Accordingly, Livewire's motion to dismiss is granted as to AEG's claim for enforcement of the liquidated damages provision of the Note.

### F. AEG's Tortious Interference Claim Must Be Dismissed Because the Note Is Void.

Livewire moves to dismiss AEG's tortious interference claim against Hodson. "Under New York law, the elements of a tortious interference claim are: (a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996) (citations omitted). Because the Note is void, there is no valid contract as required by the first element. Accordingly, AEG's tortious interference claim is dismissed.

### G. AEG's Unjust Enrichment Claim Must Be Dismissed Because It Has Unclean Hands.

Livewire moves to dismiss AEG's unjust enrichment claim. In *Livewire II*, the Court noted that it understood that the unjust enrichment claim is "pleaded in the alternative, in the event that the Court ultimately concludes that the Note is unenforceable." 2019 WL 3553293, at *2. Because the Court has concluded that the Note is unenforceable, it must therefore address the unjust enrichment claim. An unjust enrichment claim "rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *IDT Corp. v. Morgan*

18

*Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) (citation omitted).  As a general matter, a plaintiff seeking equitable relief must "come with clean hands."  *In re Ampal-Am. Israel Corp.*, 545 B.R. 802, 810 (Bankr. S.D.N.Y. 2016) (quoting *Bentley v. Tibbals*, 223 F. 247 (2d Cir. 1915)).  Therefore, where the plaintiff has "unclean hands," equitable remedies like unjust enrichment are unavailable.  *See Blue Wolf Capital Fund*, 961 N.Y.S.2d at 90 ("[A]n equitable remedy . . . is unavailable to a party with unclean hands.") (citations omitted).  The *Blue Wolf Capital Fund* court held that where a lender has "charged criminally usurious interest," its hands are unclean and thus "it is not entitled to equitable relief."  *Id.*  The Court follows that holding here.  Accordingly, AEG's unjust enrichment claim is likewise dismissed.

## IV. CONCLUSION

Livewire's motion to dismiss is GRANTED because the Note is unenforceable and AEG is not entitled to equitable relief.  The Court denies AEG leave to replead because any attempt to replead the claims asserted in the SAC would be futile.  *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (noting that leave to amend need not be granted where the proposed amendment would be futile).  Accordingly, all claims in the SAC are dismissed with prejudice.

The Clerk of Court is directed to terminate the motion pending at Dkt No. 199.

SO ORDERED.

Dated:  January 28, 2020
  New York, New York

_____
GREGORY H. WOODS
United States District Judge